## In re GOETZ.

(District Court, D. Arizona. February 27, 1923.)

No. B–66.

1. **Abatement and revival ⬅46—Mode of suggesting bankruptcy of suitor.**

    It is not the duty of a state court to stay proceedings merely because it hears of the bankruptcy of a suitor, but it must be informed of the fact by proper pleadings.

2. **Bankruptcy ⬅156—Intervention by trustee in action in state court.**

    A trustee in bankruptcy need not intervene in an action between the bankrupt and another party in the state court; but, if he does not, he is bound by the judgment to the same extent that any party acquiring interest in the property pending suit is bound.

3. **Bankruptcy ⬅288(2)—Claim supported by judgment of state court held not merely colorable.**

    Claim of one to property as partner of bankrupt, supported by judgment of a state court secured without fraud or collusion, *held* not colorable merely, so that it could be disposed of in a summary manner by the bankruptcy court.

In Bankruptcy. In the matter of the estate of Charles E. Goetz, bankrupt. On petition to review order of sale of referee. Order set aside.

Charles Blenman, of Tucson, Ariz., for trustee.

O. Gibson, of Tombstone, Ariz., for claimant.

DOOLING, District Judge. The bankrupt, Goetz, and one Matteson entered into a partnership in 1918 for the production and sale of honey. Goetz was to furnish the money for purchase of apiaries and supplies, and Matteson was to care for the bees. His father was to assist him, but was to receive nothing for his services until the enterprise was clear of indebtedness. The agreement provided further:

"Any funds borrowed for the purpose of purchase of additional bees or supplies, the party of the first part [Goetz] must pay the interest personally; but the principal of sum borrowed will be paid by both parties, received from the sale of honey derived from various apiaries. The funds left after all indebtedness is paid, including material and supplies, shall be equally divided between the parties."

Certain colonies of bees and 160 acres of land, purchased after the partnership was entered into with money furnished by Goetz, and title to which was taken in his own name, but which were used in the partnership business, are the subject of the present proceeding. The business was carried on for about four years, during which time $24,-228 was received from the sale of honey, all of which was turned over to Goetz. Of this amount, so far as can be gathered from the record, Goetz paid out the running expenses of the business, amounting to $9,669.15, expended for equipment and replacements $2,300, advanced to Matteson $2,500 in cash and $600 in merchandise, making a total expenditure of $15,069.15, leaving, so far as appears in this proceeding, $9,158.85 unaccounted for. The items of expenditure are material

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

here only in a very general way, and solely as bearing on the question as to whether or not the claim of Matteson is substantial or merely colorable.

The partnership contract was evidently drawn by the parties themselves and is rather inartificial, but the clause quoted, providing for the payment of the principal used in the purchase of additional bees or supplies out of moneys received from the sale of honey, must certainly contemplate that such property, at least after Goetz had received enough money to pay the principal, should become partnership property. On April 21, 1922, Matteson brought an action in the state court against Goetz for an accounting of the partnership interests and to have it decreed that the property in question, though held in the name of Goetz, was partnership property. Summons issued and was served on Goetz on the same day, and on May 13th his default was entered, and the action proceeded to trial and judgment. On April 21st a temporary restraining order was issued and served, restraining Goetz from incumbering in any manner or conveying any of the real or personal property belonging to the partnership. An accounting was ordered on May 15th, and on May 31st a decree was entered, adjudging that the property in question was the property of the partnership, that Goetz was indebted to Matteson in the sum of $3,029.42, and decreeing that Matteson had an equitable lien on the partnership property for that amount.

Meanwhile, on May 4th, Goetz filed his petition in this court to be adjudicated a bankrupt, and was so adjudicated on May 5th. On May 29th a trustee was chosen by the creditors. This was two days before the decree was entered in the state court. No application was made either to the state court or to this court to stay the proceedings until after the decree had been entered and was about to be executed. In October, 1922, the trustee applied to the referee for an order to sell the property in question as assets of the bankrupt. Matteson appeared and contested the application, claiming that the property was partnership property, and not the individual property of the bankrupt, and objected to the administration of the property in the bankruptcy proceeding, and prayed that the court limit its inquiry to the determination of whether or not his claim was colorable merely, and that further proceedings under the application to sell be stayed until the trustee could prosecute a plenary action to determine the ownership. The referee overruled his objection, held that his claim was colorable merely; that the property was the individual property of the bankrupt, and directed it to be sold. The case comes here on a petition for review of the order of sale. This somewhat extended statement of the case seems to me to be necessary for the correct understanding of the question involved.

[1-3] The evidence taken on the hearing and sent up by the referee shows without contradiction that Matteson at all times had the property in his possession as managing partner, and claimed and believed it to be partnership property. He was the active manager of the business, in so far as the production of honey was concerned, while Goetz attended to the sales. Before the bankruptcy proceedings were inaugurated, he had brought an action in the state court for the purpose of

having it decreed therein that it was partnership property. This action proceeded in an orderly manner to judgment as prayed for. There is no suggestion of fraud or collusion, though Goetz did not defend. It is not the duty of a state court to stay proceedings merely because it hears of the bankruptcy of a suitor, but it must be informed of the facts by proper pleadings. It does not, indeed, appear that the state court ever learned of the bankruptcy proceedings until long after the entry of its judgment. The judgment was entered two days after the selection of the trustee in the bankruptcy proceeding, but he made no effort to intervene. I gather from something in the record that a lis pendens was on file, giving notice to all the world that the real property was in part at least involved in the suit, and both it and the personal property were undoubtedly in Matteson's possession, and used by him for partnership purposes, and no steps were ever taken by the trustee to secure actual possession thereof as the individual property of Goetz.

The trustee need not intervene; but, if he does not, he is bound by the judgment to the same extent that any party acquiring an interest in the property pending suit is bound. Thatcher v. Rockwell, 105 U. S. 467, 26 L. Ed. 949. To what extent he is so bound in the present instance, if at all, need not be determined here. But Matteson's claim, based on the facts disclosed, presented in good faith and supported by a judgment secured without fraud or collusion, in a competent court of record having jurisdiction of the parties and the subject-matter, cannot in my opinion be held to be colorable merely, so that it may be disposed of in a summary manner by the bankruptcy court. The claimant in such case cannot be deprived of his right to be heard in a plenary suit.

For this reason the order of sale must be set aside; and it is so ordered.