**In the Matter of Millard Delloy MONSON and Leona Maxine Monson, Debtors.**

**FARMERS STATE BANK, Plaintiff,**

v.

**Hugh A. MINER, successor trustee in bankruptcy, Defendant.**

**Bankruptcy No. 80–04205–SJ.
Adv. No. 82–0741–SJ.**

United States Bankruptcy Court,
W.D. Missouri,
St. Joseph Division.

July 18, 1984.

Ronald S. Weiss, Berman, DeLeve, Kuchan & Chapman, and James C. Jarrett, Heavner, Wilkins, Jarrett & Kimball, Kansas City, Mo., for plaintiff.

Hugh A. Miner, St. Joseph, Mo., for defendant.

DENNIS J. STEWART, United States Magistrate.

ORDER DIRECTING TRUSTEE TO IDENTIFY PORTIONS OF TRANSCRIPT RELIED ON BY HIM IN SEEKING DETERMINATION OF CERTAIN ISSUES

This adversary action was commenced in this court by the Farmers State Bank to recover from the trustee the proceeds of sale of certain real property to which both the plaintiff bank and Ora Butcher had conflicting claims.[1] A parallel case, seeking to establish the right of the Farmers State Bank to the same real property, was simultaneously pending in a state court. The bankruptcy court set successive hearings on the merits of this action while the parallel state court action was yet pending. At each of those hearings, the trustee expressly declined the opportunity to have the bankruptcy court determine the action and requested that the issues be tried and determined by the state court.[2]

Accordingly, when the state court made the determination that the Farmers State Bank was entitled to the proceeds of the sale of the subject real property, the court entered its judgment determining the state court judgment to be binding on the trustee under principles of *res judicata*, stating the following in support of its judgment:

"The trustee's contentions concerning the extent of the claim are, on the basis of the foregoing facts, *res judicata* by reason of his prior, express declination to raise that issue in this court, although granted an express opportunity to do so, and by reason of his, in substance, opting out of the state court action and agreeing to abide its judgment. 'It is fundamental that a final judgment by a court of competent jurisdiction is *res judicata* as to the parties thereto, not only as to all matters litigated and determined by such judgment, but also as to all relevant issues which could have been presented.' *Hudson* v. *North American Surety Co. of New York*, 377 F.2d 698, 699 (8th Cir.1967). See also *Matter of Nitsche*, 11 B.R. 443 (Bkrtcy.W.D.Mo.1981), and authority therein cited."

Because this court believed the principle of *res judicata* to be so obviously applicable under these circumstances, it relied upon these generalities and failed to mention that the authorities on the issue have refined the principle of *res judicata* to find that the trustee is bound by a judgment against the debtor under circumstances such as those at bar. "(T)he adjudication of the bankrupt does not abate the proceedings; nor does the appointment and qualification of a trustee do so ... Even though title to the chose in action vests in the trustee ..., if the trustee, upon appointment and qualification, declines or fails to prosecute the action, the bankrupt may continue its prosecution to judgment, and it has been said that the trustee may accept the fruits of the litigation if it is successful ... It has also been said that where the suit is thus continued by the bankrupt, the trustee will be concluded by the judgment rendered." 1A Collier on Bankruptcy para. 11.10, pp. 1202, 1203, 1204 (1976). "Upon the failure of the trustee to apply to be substituted in place of the bankrupt, or to become a party to the suit, it seems that it may be prosecuted or defended by the bankrupt, whether the result of the litiga-

---

1. In the complaint which was filed to commence this adversary action, the Farmers State Bank alleged that it had a valid and perfected security interest on lot 38 in Monson Addition to Cameron, Missouri; that, upon representation of the debtors that they had obtained a buyer for the property, "plaintiff issued and delivered to the Monsons a partial release of the aforementioned Deed of Trust releasing said Lot 38"; that, despite that representation, no sale was ever made; and that "(o)n June 1, 1979, the Monsons gave their Deed of Trust on Lot 38 to one Ora Butcher, who as a result of the aforementioned release, became the holder of the First Deed of Trust of record against Lot 38."

2. This court has previously detailed the trustee's successive declinations to try the matter in the bankruptcy court and instead to rely upon the judgment of the state court. See note 1 to the final judgment issued by this court on November 18, 1982. 26 B.R. 11

tion inures to his own benefit or the benefit of his creditors, and *the trustee, although he does not become a party to the suit, will be bound by the judgment rendered."* *Heckscher* v. *Blanton,* 111 Va. 648, 69 S.E. 1045, 37 L.R.A. (N.S.) 923. (Emphasis added.) The rule is held to be universally applicable when, as in the action at bar, the debtor's property provides the subject matter of the litigation. "If (the trustee) fails to intervene (in a proceeding pending as of the date of bankruptcy), the suit will continue, if not stayed, and if the bankrupt's property is involved the trustee will be bound by the judgment to the same extent as any other person who succeeds to an interest in property pending litigation." 1A Collier on Bankruptcy para. 11.09(5), p. 1192, 1193 (1976). "It is also settled law that where a court, federal or state, has properly acquired jurisdiction in a suit brought against a person to enforce an adverse claim of lien on, or title to, certain land, and after such court has acquired such jurisdiction in such suit a petition in bankruptcy is filed by or against such person, but such aforementioned suit is not stayed by the bankruptcy court, and no officer thereof seeks to intervene in such suit, a judgment thereafter rendered therein will be recognized by the bankruptcy court as valid and binding." *Matter of Goetz,* 289 Fed. 118. "If the suit is permit-

ted to proceed, the trustee is bound by an in rem judgment rendered subsequent to bankruptcy, whether or not he appears in the in rem action." 1B Moore's Federal Practice para. 0.419(3.–1). These authorities seem particularly applicable in respect of the action at bar, in which the trustee, with knowledge of the state court suit, declined to have the matter tried by the bankruptcy court and instead explicitly relied upon the results of the state court action. This result is, by the authorities, also placed upon the ground of *res judicata.* "(I)f the trustee has the right to take over and prosecute an action begun by the bankrupt, but fails to do so, the judgment binds not only the parties to the litigation, but the estate as well." 1B Moore's Federal Practice para. 0.419(3.–6), p. 675 (1983). These simple principles apply with some certainty in the simple factual situation before the court in this action.[3]

But the failure of this court to mention this principle, which is governing under the circumstances at bar, led to the district court's rejection of the principle of *res judicata,* on the basis of the following reasoning:

"The doctrine of *res judicata* does not appear to be a technically sufficient basis to support the bankruptcy court's ruling. One of the essential requirements for applicability of the doctrine of *res judi-*

**3.** The former rule that in respect of *in personam* actions in which judgment was rendered against the bankrupt after the date of bankruptcy, the former judgment was not binding against the trustee, was based upon the old Bankruptcy Act's (1) making it a necessity for the court to grant the trustee power to intervene in the pending action and (2) making *in personam* actions outside the scope of the bankruptcy estate. This is no longer applicable under the current Bankruptcy Code in which *in personam* actions become part of the estate and it is no longer necessary for the trustee to seek and obtain leave of court to undertake litigation. "Under the terms of section 11c of the Act, it was essential that the trustee have the approval and authorization of the bankruptcy court before he intervened as a plaintiff in the action. However, Rule 610 provides to the contrary, and court approval is no longer a necessary prerequisite to the trustee's intervention in, or prosecution or commencement of, any suit. And with the separation of administrative and judicial

functions and the possibility of removal of the action to the bankruptcy court under 28 U.S.C. section 1478, it would certainly not be desirable." 2 Collier on Bankruptcy para. 323.02(b), p. 323–8 (1984). And, in this case, the court permitted the state court action to proceed to judgment *at the request and behest of the trustee,* thus relieving the automatic stay. This had the effect of legitimizing the state court judgment and giving it binding effect against the trustee. "(T)he practice under the Bankruptcy Code should eliminate most, if not all of these niceties. The bankruptcy court may terminate, annul, modify, or condition the stay, and it may be supposed that the court would not fractionalize the litigation to no purpose, or that a creditor would pursue permission to litigate outside the bankruptcy court if the merits of his claim would be retried by the bankruptcy court after judgment." 1B Moore's Federal Practice para. 0.419(3.–6), p. 693 (1983). It was not this court's intention, in granting such relief from the stay, that the action should be twice tried.

*cata* is that the parties to the second action must be the same as, or in privity with, the parties to the first action. See *Kapp* v. *Nautrelle [Naturelle], Inc.,* 611 F.2d 703, 707 (8th Cir.1979). While a trustee in bankruptcy does acquire many of the bankrupt's interests in his property, the two are not considered privies for the purpose of binding the trustee to an adverse judgment in state court. See, e.g., *In re Teletronics Services, Inc.,* 18 B.R. 705, 706 (E.D.N.Y.1982), where the Court held that 'insufficient privity exists between the trustee and the bankrupt.... Operation of res judicata requires identity of parties. Yet the creditors presently represented by the trustee were not parties to the original action, nor were their interests represented therein.'

"In this case, the trustee litigated the question of appellee's claim to lot 38 in neither the state court nor the bankruptcy court. He was not a party to the state court action, he declined to litigate the question in bankruptcy court, and no judgment was ever entered against him. Instead, the bankruptcy court's order adopting the state court judgment specifically dropped the trustee as a party. Thus, the earlier orders in state court and in bankruptcy court involved only the bankrupt and the bank. The trustee was not a party to either judgment."

The authority adverted to in this passage was a case in which the judgment of the state court was held, under a standard exception to the rule of *res judicata,* not to be binding when the trustee in bankruptcy has greater rights, by virtue of the intervening bankruptcy, than did the debtor himself.[4]

Nevertheless, the district court affirmed the judgment of this court on grounds other than those of *res judicata.* In so doing, it initially followed the lead of this court in refusing to adjudicate an issue belatedly inserted into the proceedings by the trustee—that of whether granting the Farmers State Bank the proceeds of sale of the subject property in accordance with the state court judgment would grant it more than the total balance due from the debtor.[5]

On the trustee's motion for reconsideration, however, the district court changed its opinion in this regard so as to remand this action to this court for a finding on this issue.[6] In so doing, the district court mused—albeit briefly—as to why this court had not determined the issue but had rather relegated its determination to a possible future action.[7]

██ The reason that this court did not determine the issue in this action is that it appeared that it was neither raised in the pleadings nor tried in this court, either

---

4. "(T)he trustee will in certain instances have greater rights than the bankrupt, by virtue of the Bankruptcy Act itself. Thus assume that the debtor, prior to bankruptcy, had sued to set aside a conveyance, and the defendant interposed the defense that the property had been transferred to him as a gift. While this would be good as against the bankrupt, it would not necessarily be so against the trustee since the latter could contend that the transfer constituted a fraudulent conveyance and was, therefore, defeasible." 1A Collier on Bankruptcy para. 11.10, p. 1200, n. 12 (1976). Additionally, in the case relied on by the district court, *In re Teltronics Services, Inc.,* 18 B.R. 705, 706 (E.D.N.Y. 1982), there were issues which were sought to be raised which had not actually been adjudicated in the prior proceeding. It was only with respect to those that the former judgment was held not to be *res judicata.*

5. Both this court and the district court initially held that contempt proceedings could be utilized to determine whether enforcement of the judgment would result in the plaintiff's receiving more than it would be entitled to under the law.

6. "However, the current analysis by the trustee does probe some points of uncertainty. For example, Mr. Maxwell testified at one point in the September 1982, hearing, that he asserted a secured debt of approximately $220,000 (Tr. 11) whereas he later testified that the $200,000 note was the only one which was secured (Tr. 25). The bankruptcy court's ruling does not make clear why that court believed there was no overclaiming by the Bank, or whether Judge Stewart intended to defer a close look at the issue until contempt proceedings were instituted."

7. See note 6, *supra.*

expressly or by implication. On review of the pleadings, it does not even now appear that it was raised in any of them. Nor does the evidence which was adduced in the hearing of this action now appear to this court to have fairly raised the issue so that it can be deemed to have been tried by implication within the meaning of Rule 15(b) of the Federal Rules of Civil Procedure which, insofar as it is here pertinent, provides as follows:

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues ..."

Furthermore, unless the evidence was such that the issue can be deemed to have been raised and tried by consent and to warrant judgment for the trustee, this court may not now entertain the matter for a myriad of reasons. In the first place, any granting of leave to the trustee to amend his complaint, without present consent of the Farmers State Bank, to assert a claim for turnover must be regarded as without the jurisdiction of the bankruptcy court. None of the jurisdictional statutes recently applicable to the bankruptcy court grants this court jurisdiction over a trustee's claim against a third party when the latter has a substantial claim of right, such as the Missouri Farmers Bank's valid and perfected security interest in the case at bar.[8] Fur-

8. Further, jurisdiction ordinarily attaches as of the time of the filing of the petition or complaint to commence an action and its extent and character are ordinarily defined by the law in effect at that time. "The time of filing suit is, of course, the critical date." *Hawes* v. *Club Ecuestre El Comandante,* 598 F.2d 698, 703 (1st Cir. 1979). "The general rule is that a court's acquisition of jurisdiction over a case depends on the facts existing at the time its jurisdiction is invoked ... And where, in view of the facts existing at the beginning of the proceedings, the court has acquired jurisdiction over a case, that jurisdiction is ordinarily not ousted by subsequent events." 20 Am.Jur.2d *Courts,* section 142, p. 491 (1965). "A court's jurisdiction in a case depends upon the facts which exist at the time the jurisdiction was invoked, i.e., at the time of the commencement of the action ... That jurisdiction is not ousted by subsequent events." *In re Stahl, Asano, Shigetomi Associates,* 36 B.R. 179, 182 (Bkrtcy.D.Hawaii 1983). Thus, if the trustee's counterclaim can be regarded as having been tried by implication, as described in Rule 15(b), F.R.Civ.P., as of the date of the hearing in this action, September 2, 1982, then it is within the ambit of the pervasive jurisdiction formerly exercised by the bankruptcy court under section 1471(c), Title 28, United States Code, until the effective date of its striking, December 24, 1982. But, since that time, absent consent of the adverse claimant, the bankruptcy court has not been able to exercise jurisdiction over actions by a trustee against an adverse claimant.

The current power of the bankruptcy court to act, also, is derivative of the power which existed at the commencement of the action. It is clear under the current situation enveloping the bankruptcy court that its power to act is a question which is slightly different from its jurisdiction. As of this date, it is contended by some that the added tenure granted to bankruptcy judges by the Bankruptcy Amendments Act of 1984 is unlawful and that exercise of any power under that statute can only result in an order or judgment which is null and void. This is the position of the Administrative Office of United States Courts, which has insisted that former bankruptcy judges, whose tenure, they insist, ended as of June 27, 1984, instead exercise judicial authority only as United States magistrates. On the other hand, others contend that the reappointment effected by the Bankruptcy Amendments Act of 1984 is not only effective but also renders any actions undertaken in bankruptcy cases by United States magistrates null and void. But this court need not resolve that dispute with respect to the actions at bar, which were filed long before the lapsing of the transition statute on June 28, 1982, created the seeming hiatus in the tenure of bankruptcy judges. As to this action, therefore, the undersigned simply sits in the status of a holdover judge until a successor is appointed. Both the relevant portion of the transition statute and general legal principles support this basis of judicial power. It is to be noted in this regard that the relevant portion of the transition statute, section 404(b) of Public Law 95–598, originally purported to extend the term of a bankruptcy judge to "March 31, 1984, *or when his successor takes office."* (Emphasis added.) The successive Congressional extensions of the date of March 31, 1984, properly construed according to time-honored canons of construction, did not delete the language and effect of the initial minimal extension to the time when a successor law-

ther, the assertion of a turnover complaint at this juncture runs afoul of the applicable statute of limitations, unless that statute is waived by the Farmers State Bank.[9] Nor can it be said that, by filing its complaint in the bankruptcy court to recover the proceeds of sale of lot 38, the Farmers State Bank has consented to the jurisdiction of this court to hear and determine the trustee's counterclaim against it. For that principle applies only if the counterclaim would be a compulsory counterclaim.[10] And, if the trustee's counterclaim must be regarded as compulsory, then it is *res judicata* on the basis of the state court action.

■ If, as this court suggested in its final judgment, the trustee had simply brought a contempt motion to enforce this court's judgment, it would have been within the bankruptcy court's power to consider whether enforcement would have given the bank, in combination with other applicable monies and value, more than it was entitled to.

But, now that the district court has determined, as a matter of law of the case, that the judgment must be altered to include a judgment on the other monies, the trustee is foreclosed by the foregoing principles unless he can demonstrate that the issues sought to be determined have already been tried by implication within the meaning of Rule 15(b), *supra.*

Accordingly, it is hereby

ORDERED that the trustee identify in a writing filed with the court and served on counsel for plaintiff within 15 days of the date of entry of this order the portions of the transcript of the hearing, by page and line numbers, relied on by him to demonstrate that the issues raised by him have been tried.

---

fully takes office. For the form of the successive extensions was simply to replace "March 31, 1984," with subsequent dates, finally ending on June 27, 1984, and not to delete the language, "or when his successor takes office." In respect of each extension, a subsequent extension provided that the term of a sitting bankruptcy judge should "expire on" the date on which the extension was to end. But this did not purport to end his holdover status as contained in the language, "or when his successor takes office." Accordingly, *according to the lasting effect* of the transition statute, the undersigned, as to the action at bar, continues to sit as a holdover judge.

Further, under the general law, even in the absence of such a statutory provision, a judge whose term of office runs out ordinarily retains power to act, *de facto* if not *de jure,* until his successor is appointed, with respect to actions filed prior to the end of the term of office. "There is authority that even in the absence of statute it is the right and duty of an incumbent judge to hold over and exercise the duties and functions of the office until his successor is appointed. But under such circumstances he is not a judge de jure, but at most a judge de facto. He merely performs the functions of the office *until a duly qualified appointee appears,* and then is bound to yield the office to the appointee ..." 16 Am.Jur.2d *Judges* section 16, pp. 105–106 (1969). This theory of *de facto* power of the sitting bankruptcy judges finds support in the very recent order issued in *Matter of Walker,* Civil Action No. 83–6005–CV–SJ (W.D.Mo. July 12, 1984), by the distinguished district judge of the St. Joseph Division, the Honorable Howard F. Sachs.

**9.** See section 549(d) of the Bankruptcy Code providing that, even if the transfers were postpetition, an *action to recover such transfers* "may not be commenced after the earlier of (1) two years after the date of the transfer sought to be avoided; and (2) the time the case is closed or dismissed." Other than the transfer of proceeds to lot 38, other transfers would seem almost certain to be without the two-year period there described.

**10.** "(I)t has ... been held that a petition for reclamation does not amount to a consent for the bankruptcy court to adjudicate summarily the liability of the claimant on a totally unrelated matter asserted by a counterclaim. Nor is the filing of such a petition a consent for the court to adjudicate the rights of a third party, where the latter might still have some right to the property and has not consented to the court's summary jurisdiction." 2 Collier on Bankruptcy para. 23.08(5), pp. 551, 552 (1976). "A similar question arises where the trustee meets a creditor's claim with a counterclaim of any nature. It has been said that the mere filing of a proof of claim for allowance does not give the court jurisdiction without further consent to render a judgment summarily for an excess amount due the estate on a petition or counterclaim by the trustee ..." *Id.,* p. 557.