In the Matter of James Riley WALLACE, Debtor.

WESLEY MEDICAL CENTER, Objecting creditor,

v.

James Riley WALLACE, Respondent.

Bankruptcy No. 83–03297.

United States Bankruptcy Court, W.D. Missouri, W.D.

July 25, 1984.

See also Bkrtcy., 46 B.R. 802.

Paul A. Rueschhoff, Prairie Village, Kan., for movant.

Keith B. Koenigsdorf, Wohlner & Hoskins, Kansas City, Mo., for respondent.

ORDER VACATING AND SETTING ASIDE "FINDINGS OF FACT, CONCLUSIONS OF LAW AND FINAL ORDER DIRECTING PAYMENT OF $25,000.00 PLUS ANY EARNED INTEREST TO DEBTOR BUT CONDITIONING DISCHARGE OF DEBTOR IN CHAPTER 13 PROCEEDING ON USE OF UNEXEMPT AND UNENCUMBERED PORTION OF PROCEEDS TO PAY CREDITORS THROUGH CHAPTER 13 PLAN" OF FEBRUARY 1, 1984, AND INSTEAD DIRECTING MONIES TO BE RETURNED TO THIS COURT FOR PROPER DISTRIBUTION

DENNIS J. STEWART, Bankruptcy Judge.

During the pendency of the debtor's chapter 13 proceedings, some $25,000 was paid into the registry of the court. This gave the court jurisdiction to determine the proper disposition of the monies which had been paid into its custody. A court of equity, such as the bankruptcy court, always has jurisdiction to determine the proper recipients of a fund of money in its custody. "The court, having possession of the property, has an ancillary jurisdiction to hear and determine all questions respecting the title, possession, or control of the property. In the courts of the United States this ancillary jurisdiction may be exercised though it is not authorized by any statute. The jurisdiction in such cases arises out of the possession of the property, and is exclusive of the jurisdiction of all other courts, although otherwise the controversy would be cognizable in them." *Murphy v. John Hofman Co.*, 211 U.S. 562, 570, 29 S.Ct. 154, 157, 53 L.Ed. 327 (1909). "Property in the custody of a court of equity for administration is always held by it in trust for those to whom it rightfully belongs. The jurisdiction to inquire and determine who the lawful owners of it are and to that end to call before it all claim-

ants by a reasonable notice or order to present their claims to the court within a reasonable time, or to be barred of any right or interest in the property in its custody, or in its proceeds, is a power inherent in every court of equity, incidental and indispensable to the authority to administer and to distribute its proceeds." *In re Rochford,* 124 F. 182, 187 (8th Cir.1903). And the court having this custody, regardless of the pendency of other proceedings, has the power to issue injunctive and other extraordinary orders in order to protect the res in its actual or constructive possession. "In its exercise of its jurisdiction over the debtor's property, the court had power to issue injunctions and all other writs necessary to protect the estate from interference, and to ensure its orderly administration." *Diners Club, Inc. v. Bumb,* 421 F.2d 396, 398 (9th Cir.1970). Thus, even in the absence of a pending chapter 13 proceeding a court having a res in its possession, actual or constructive, would retain jurisdiction to administer and distribute that res, for "[t]his ancillary jurisdiction ... flows not only from the express provisions of statute, ... but from inherent power of a court of equity to protect its control of a res in its custody." *Id.*

Against the initial contentions of the Wesley Medical Center that the monies were properly payable to the chapter 13 trustee and distributable by the chapter 13 trustee, the court issued its order on February 1, 1984, directing that the monies be paid over to the debtor under section 1306(b) of the Bankruptcy Code, which provides that, "[e]xcept as provided in a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate." The court conditioned this order on the debtor's being granted a discharge in chapter 13 proceedings only if he used the unexempt and unencumbered portion of the proceeds to pay creditors through the chapter 13 plan.

Under the governing procedural rules, the order of February 1, 1984, could not have any effect until after ten days had expired from and after its issuance, so as to give aggrieved parties the time to move

to alter or amend the order or to appeal it. See Rule 7062 of the Rules of Bankruptcy Procedure to the effect that "no execution shall issue upon a judgment nor shall proceedings be taken for its enforcement until the expiration of 10 days after its entry." Nevertheless, by mistake, at the instance of the debtor, the money was paid out by the office of the bankruptcy clerk to the debtor and counsel. The appellant's appeal was later timely filed by the Wesley Medical Center.

■ The payment out of money from the custody of the court by mistake cannot deprive the court of its jurisdiction over that money and the power to command its return for proper disposition. The issue had not yet been finally decided as to the proper disposition of the monies when they were taken from the court by mistake and not under proper authority. Accordingly, when this court learned of the premature payment of the monies to counsel for the debtor, it contacted counsel's office on the afternoon of February 1, 1984, and informed counsel that they were holding the monies as officers of the court and as fiduciaries and should not further dispose of them. There was no reply from counsel until February 10, 1984, when they sought to have the underlying chapter 13 proceedings dismissed as a matter of right under section 1307(b) of the Bankruptcy Code. Because, under that section, dismissal is an absolute right of the debtor, the court had to grant the motion, but, in doing so, it informed counsel, both the counsel presenting the motion to the court on February 10, 1984, and Keith B. Koenigsdorf, by telephone, that this dismissal could not excuse the holding of the monies pending an order of the court to repay them into the court pending the appeal. Finally, in the hearing on the issue of stay pending appeal, the court directed the turnover of the monies back into court, but counsel for the debtors stated that, prior to the dismissal, his law firm had paid those monies over to the debtor.

These payments by mistake cannot alter the jurisdiction of the court to deal with money paid out of its custody by mistake, which monies must be considered as remaining within its constructive possession, according to the authorities cited above. Accordingly, this court must begin the proceedings to recover the monies mistakenly paid out of its possession by appropriate measures, including potential contempt and other sanctions, and those proceedings cannot be terminated until the monies or their equivalent, in the form of surety supersedeas bonds, are filed on appeal.

By way of postscript, this court must note that, by way of a second post-hearing brief which did not come to the attention of the court until after it had issued its order of February 1, 1984, the Wesley Medical Center alleged that the payment of the $25,000 to the court in the first place was done by a garnishee under an order in garnishment to turn over at least some of the funds to the Wesley Medical Center. This issue had not been previously raised at the hearing or before and no evidence was properly before the court on this matter. It can only be noted that, according to the contentions of Wesley Medical Center, it obtained its prejudgment order of garnishment on November 10, 1983, within 90 days of the filing of the within chapter 13 proceedings on December 13, 1983. It would therefore appear that the order of garnishment would, under almost any imaginable circumstance, be nullifiable as conferring a preference on Wesley Medical Center. "[I]t would appear that any type of legal proceeding that creates a lien, such as a garnishment proceeding, creditor's bill attachment or other similar process, could be classed as a 'transfer' within the meaning of sections 101(41) and 547." 4 Collier on

Bankruptcy ¶ 547.12, pp. 547–42, 547–43 (1983). But, regardless of this consideration, or of any consideration that the debtor's promptly dismissing these proceedings after using the court to deprive creditors of their right to the money may have constituted an abuse of process of the court, the court must now condition a stay of its efforts to regain the monies pending appeal upon the debtor's posting a surety supersedeas bond or else returning the monies to the extent of $25,000 to the registry of the court.

The contention to the effect that the $25,000 paid into court defeated the garnishment rights of the Wesley Medical Center had little meaning, for the foregoing reasons, so long as the chapter 13 proceedings were pending. But now that the underlying chapter 13 proceedings have been dismissed by the debtor,[1] this fact takes on material and overriding significance. For, without the underlying chapter 13 proceedings, the debtor could not have prevailed in the matter of the garnishment action which had previously been inaugurated by the Wesley Medical Center.[2]

Therefore, in dismissing the underlying chapter 13 proceedings, the debtor has removed the basis for the court's order of February 1, 1984, which was rendered in his favor. Without the pending of the chapter 13 proceedings, the court would have been bound by the law to direct that the monies be applied in accordance with the laws of the State of Missouri in the garnishment action. Further, the debtor undertook his dismissal of the chapter 13 proceedings with knowledge that the court's prior order was predicated on the assumption that he would continue in good faith to prosecute those same chapter 13

---

**1.** Section 1307(b) of the Bankruptcy Code applicably provides that "[o]n request of the debtor at any time if the case has not been converted under section 706 or 1112 of this title, the court shall dismiss a case under this chapter."

**2.** As noted above in the text of this memorandum, as against the argument that the monies were properly subject to the garnishment, the debtor in chapter 13 proceedings has only the contention that the garnishment constituted a preference has no meaning. Thus, while the judgment which is currently pending on appeal, as to the matters then properly before this court and now before the appellate court, is not in error, it should be a subject of relief from the judgment because of events later happening and therefore not now properly before the appellate court.

proceedings. Further, the debtor refuses to obey the order of this court to post a surety bond or return the $25,000 to the registry of the court.[3] The simple result has been that the bankruptcy court appears to have been fraudulently used as a conduit to defeat Wesley Medical Center's garnishment proceeding in a manner not contemplated by the prior order of this court.[4]

Under such circumstances, it has been held that it is appropriate for a court to grant relief from its former judgment. The current rules of bankruptcy and civil procedure recognize "the inherent power of a court to grant relief when fraud has been perpetrated upon it. This inherent power is to be exercised by the court upon whom the fraud is practiced.... The defrauded court may act ... upon its own motion, and even though the prevailing party opposes the proceeding and the party cast in judgment does not desire to open the judgment.... Where fraud upon the court is established, the court has ample power to afford appropriate relief. Apart from any intervening equities, where the guilty party recovering judgment was plaintiff in an 'equity' suit his judgment should be set aside and his claim dismissed, irrespective of the merits of his claim. And this principle has been applied even though it was not established that the judgment was the product of the fraud.... 'Fraud upon the court' ... embraces ... that species of fraud which does or attempts to, subvert the integrity of the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." 7 Moore's Federal Practice ¶ 60.33, pp. 60–351, 60–353, 60–360 (1983).

Further, it is held that such relief may be granted even though an appeal from the order or judgment may be pending.[5]

For the reasons detailed above, this court issued its order on April 6, 1984, directing the parties to show cause why the order of February 1, 1984, should not be vacated, set aside, and held for naught. The responses to that order do not in any way deny the crucial material fact that the chapter 13 proceedings have now been dismissed. Thus, there can be no continuing reason to stay or frustrate the garnishment proceedings pending in a court of the State of Kansas. The doctrine of avoiding preferential transfers from a bankruptcy estate cannot retain any meaning when there is no longer any bankruptcy estate. The order of February 1, 1984, must accordingly be set aside and the $25,000 directed to be returned to this court for proper disposition according to the garnishment laws of Kansas.[6]

It is therefore, accordingly,

ORDERED that the order of February 1, 1984, entitled "findings of fact, conclusions of law and final order directing payment of $25,000 plus any earned interest to debtor but conditioning discharge of debtor in chapter 13 proceeding on use of unexempt and unencumbered portion of proceeds to pay creditors through chapter 13 plan" be, and it is hereby, vacated and set aside and the $25,000 is directed to be returned to this court for distribution according to the

---

**3.** A notice of appeal has been filed from the order requiring these actions by the debtor. But this order has not been stayed; further, appeal, under Rule 8005 of the Rules of Bankruptcy Procedure, is not the proper manner in which to seek review of that order.

**4.** It would be abuse of the process of the bankruptcy court for the debtor to have defeated the existing garnishment on the basis that it constituted a preference, see note 2, *supra*, and then to remove any basis for this ground. *Id.* The court clearly predicated its order on the assumption that the debtor would in good faith go ahead with his chapter 13 proceeding.

**5.** "When a motion for relief has not raised matters that were within the compass of the appellate court mandate, the district court has always had the power to consider the motion without appellate leave." 7 Moore's Federal Practice ¶ 60.30(2), p. 60–340 (1983).

**6.** In restoring the money to the registry of the court, the respondent may, if he has exemptions claimable in garnishment proceedings in Kansas, retain the money attributable thereto on a showing that he is entitled to the exemptions.

garnishment law of Kansas.[7] This order is predicated on the jurisdiction and power of this court which existed at the time of the commencement of this action.[8]

7. See note 6, *supra*.

8. A court retains ancillary jurisdiction, dependent upon the jurisdiction existing at the inception of the case, to grant relief from a judgment. See, e.g., *Martina Theatre Corp. v. Schine Chain Theatres, Inc.,* 278 F.2d 798, 800, n. 1 (2d Cir. 1960) ("When such an action is brought in the federal court that rendered the initial judgment, there is ancillary jurisdiction over the question ..."). "The proceeding being ancillary and dependent, the jurisdiction of the court follows that of the original cause ..." *Local Loan Co. v. Hunt,* 292 U.S. 234, 239, 54 S.Ct. 695, 697, 78 L.Ed. 1230 (1934). Further, the power of the court to act derives from the power which existed at the time of the rendition of the judgment under the circumstances of this case. As this court has previously stated in *Matter of Monson,* 46 B.R. 3 (Bkrtcy.W.D.Mo.1984), "(t)he current power of the bankruptcy court to act ... is derivative of the power which existed at the commencement of the action ... As of this date, it is contended by some that the added tenure granted to bankruptcy judges by the Bankruptcy Amendments and Federal Judgeship Act of 1984 is unlawful and that exercise of any power under that statute can only result in an order or judgment which is null and void. This is the position of the Administrative Office of United States Courts, which has contended that former bankruptcy judges, whose tenure, they insist, ended as of June 27, 1984, should instead exercise judicial authority only as United States magistrates. On the other hand, others contend that the reappointment effected by the Bankruptcy Amendments and Federal Judgeship Act of 1984 is not only effective but also renders any actions undertaken in bankruptcy cases by United States magistrates null and void. But this court need not resolve that dispute with respect to the actions at bar, which were filed long before the lapsing of the transition statute on June 28, 1984, created the seeming hiatus in the tenure of bankruptcy judges. As to this action ... the undersigned simply sits in the status of a holdover judge until a successor is appointed and takes office. Both the relevant portion of the transition statute, section 404(b) of Public Law 95–598, and general legal principles support this basis of judicial power. It is to be noted in this regard that the relevant portion of the transition statute originally purported to extend the term of a bankruptcy judge to 'March 31, 1984, *or when his successor takes office.*' (Emphasis added.) The successive Congressional extensions of the date of March 31, 1984, properly construed according to time-honored canons of construction, did not delete the language and effect of the initial minimal extension to the time when a successor lawfully takes office. For that form of the successive extensions was simply to replace 'March 31, 1984,' with subsequent dates, finally ending on June 27, 1984, and not to delete the language, 'or when his successor takes office.' In respect of each successive extension, a subsequent section provided that the term of a sitting bankruptcy judge should 'expire on' the date on which the extension was to end. But this did not purport to end his holdover status as contained in the more definite language, 'or when his successor takes office.' Accordingly, according to the lasting effect of the transition statute, the undersigned, as to the action at bar, continues to sit as a holdover judge.

"Further, under the general law, even in the absence of such a statutory provision, a judge whose term of office runs out ordinarily retains power to act, *de facto* if not *de jure,* until his successor is appointed and takes office, with respect to actions filed prior to the end of the term of office. 'There is authority that even in the absence of statute, it is the right and duty of an incumbent judge to hold over and exercise the duties and functions of the office until his successor is appointed.' 16 Am.Jur.2d *Judges* section 16, pp. 105–106 (1969). This theory of *de facto* power of the sitting bankruptcy judges finds support in the very recent order issued in *Matter of Walker,* Civil Action No. 83–6005–CV–SJ (W.D.Mo. July 12, 1984), by the distinguished district judge of the St. Joseph Division, the Honorable Howard F. Sachs."