**In re Edward R. WOERNER, Debtor.**

**Bankruptcy No. 84–01980K.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Nov. 24, 1986.

Richard A. Sprague, Bruce L. Thall, William K. Doak, Stephen V. Yarnell, Philadelphia, Pa., for creditor.

Stephen H. Silverman, Jenkintown, Pa., counsel for debtor.

Stephen Raslavich, Philadelphia, Pa., trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

Presently before the Court is an Application of Sprague, Thall & Creamer (hereinafter "the Creditor"), for attorneys' fees and costs from Edward R. Woerner (hereinafter "the Debtor"), a former client, pursuant to an Opinion and Order entered on April 29, 1985, by the Honorable William A. King, Jr., of this Court. Judge King's Order found the Debtor in contempt for the Debtor's violation of an Order of this Court by his failure to appear at the initial examination pursuant to Bankruptcy Rule 2004. The Creditor, a Philadelphia law firm, has acted *pro se* throughout its involvement in the Debtor's bankruptcy case,[1] and has submitted an itemized statement of services and attorneys' fees and costs (hereinafter "Statement") requesting an award of $7,694.47. The Debtor filed numerous objections to the Statement. On September 25, 1986, this Court heard oral argument

---

1. The Creditor, *pro se,* has also filed an Adversary Complaint objecting to the Debtor's discharge and objecting to the dischargeability of its debt of $149,229.83. These objections were dismissed in our Opinion, *In re Woerner,* 66 B.R. 964 (1986).

and directed the filing of memoranda by both parties. For the reasons stated herein, we will only grant attorneys' fees in the amount of $450.00 and costs in the amount of $46.25.

Judge King's Order in its entirety states:

ORDERED that decision on the motion of creditor, Sprague, Levinson and Thall,[2] to vacate the Order of Discharge of September 11, 1984 is reserved pending disposition of proposed objections; and it is further

ORDERED that the motion of aforementioned creditor to have debtor, Edward R. Woerner, held in contempt is GRANTED; and it is further

ORDERED that Edward R. Woerner shall comply with the subpoena of November 7, 1984, pursuant to Bankruptcy Rule 2004, by appearing for examination at the offices of Sprague, Levinson and Thall, at a time and date set by the Court upon application of aforementioned creditor; and it is further

ORDERED that counsel for the creditor shall submit an itemized statement of services and attorneys' fees and costs arising from the debtor's failure to appear at the initial examination, and counsel for creditor shall serve one copy of the statement on counsel for the debtor. If there is no objection raised to the statement within five (5) days, the Court will consider the statement and award an appropriate amount to the creditor.

In "apparent" compliance with this Order, the Creditor has submitted an unsworn Statement signed by one of the attorneys employed by the Creditor that forty-nine (49) hours of services were performed by four (4) attorneys between November 15, 1984, and January 3, 1985,[3] and that the customary billing rate for each attorney in the Creditor's firm is $150.00 per hour. Furthermore, the Creditor has requested reimbursement for costs in the amount of $344.47 incurred between November 15, 1984, and March 12, 1985.

■ Our review of the Statement leads us to the inescapable conclusion that it is clearly insufficient under the standards for the award of attorneys's fees. *E.g., In re Meade Land and Development Co., Inc.,* 527 F.2d 280 (3d Cir.1975); *Lindy Bros. Builders, Inc. v. American Radiator and Standard Co.,* 487 F.2d 161 (3d Cir.1973).[4] Although the Creditor explained that the customary billing rate for each attorney in the Creditor's firm is $150.00 per hour, no information was provided as to the amount of experience, skill, status in the firm, or prestige in the marketplace of the attorney in question to guide the Court in setting an hourly rate. *See In re Fine Paper Antitrust Litigation,* 751 F.2d 562, 590 (3d Cir.1984). Even more significantly, the Creditor provided no information as to any of the attorneys' experience in the area of bankruptcy.[5] Although the hourly rates set by the Court should be the rate commanded in the marketplace as reflected in

2. The name of the Creditor's law firm has changed several times during the course of litigation. However, the Creditor has advised this Court that these changes have not affected the Creditor's interest herein.

3. November 15, 1984 is the date on which the Debtor failed to appear for his initial examination. January 3, 1985, is the date on which a hearing took place on the issue, *inter alia,* as to whether the Debtor should be held in contempt. The Creditor was also seeking relief on two (2) other Motions, discussed *infra,* which were not related to the Debtor's failure to appear.

4. We should add that the Creditor has requested that the reasonableness of its request for attorneys' fees be determined by the twelve factor test laid out in *Johnson v. Georgia Highway*

*Express, Inc.,* 488 F.2d 714 (5th Cir.1974). We decline to follow *Johnson* when the standard of the Third Circuit has been well established. In any event, the Creditor would not fare well under the 5th Circuit standards for reasons discussed *infra.* For example, as to factor 12, looking to awards in similar cases, we note that the Creditor has cited *In re Demp,* 23 B.R. 239 (Bankr.E.D.Pa.1982), as a case wherein attorneys' fees were awarded from a finding of contempt. However, Judge King awarded only $250.00 in that case.

5. We note that the Creditor, while a well-known Philadelphia law firm, does not appear to make frequent appearances in Bankruptcy Court. We comment only because the Creditor does not appear to have the requisite expertise to command $150.00 per hour on bankruptcy matters.

the normal billing rate, we must make a determination of the reasonableness of each attorney's rate. *Id.* The Creditor's Statement is permeated with the impermissible "lumping" together of more than one (1) activity making it impossible for the Court to properly review it. Another problem is the Creditor's attempt to obtain attorneys' fees for work performed not "arising from the debtor's failure to appear at the initial examination." Opinion of Judge King dated April 29, 1985. Hence, it is impossible to determine precisely how much time was spent on each activity. The efforts expended were duplicative as four (4) attorneys are documented as having worked on this matter. For example, we note as follows: (1) Items 1 and 2 indicate that on one day, two (2) attorneys spent 3.4 hours and 4.8 hours each on the same work; (2) portions of 20.9 hours (Items 1, 2, 3, 4, 6, 8, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21 and 24) [6] were attributed to meetings or conferences between the various attorneys and, while there is only one (1) instance where both attorneys applied for the same time expended (Item 18 and 19), it is apparent that much of the time spent was "necessary to educate each attorney about the case multiplied by the number of attorneys." *In re General Oil Distributors, Inc.,* 51 B.R. 794, 802 (Bankr.E.D.N.Y.1985) (Across-the-board reduction in hours claimed on fee application is necessary but fair expedient to correct for excessive or duplicative hours in a case involving multiple attorneys or large amount of hours claimed).

■ The Creditor raises the specious argument that the standards of *Meade Land, supra,* are not applicable because the underlying services for which an award of fees was being made therein is different from an award of fees based upon contempt. The Creditor fails to comprehend that the Court must be provided with sufficient information in order to review any applications for attorneys' fees. The Creditor misapprehends the import of *Meade Land* because regardless of the source of payment for the award of attorneys' fees, *Meade Land* sets the standards which fee applications must meet and standards by which a fee application can be evaluated. We hold that the standards of *Meade Land* apply to the instant request for attorneys' fees arising in any context, especially where, as here, the applicant has been directed to submit an itemized statement of services and costs.

Due to the numerous deficiencies in the Creditor's Statement, it is within this Court's authority to deny fees altogether. However, in light of Judge King's Order which found the Debtor in contempt, and in the interest of judicial economy because of the length of time this matter has been pending, and for reasons hereinafter stated, we will not put Counsel through the exercise of resubmitting another fee application.

In trying to determine a reasonable attorney fee without using the lodestar analysis, we concur with the approach taken by our colleague, the Honorable Bruce Fox, in *In re The Lock Shoppe, Inc.,* 67 B.R. 74 (E.D.Pa.1986). In *Lock Shoppe,* Judge Fox concluded that it was "appropriate to view the services provided as a whole and place a value on them", *id.* at 75, given the unusual circumstances of that case. Likewise, we believe it very appropriate to view the services in this matter as a whole and place a value on them.

■ In the case *sub judice,* Judge King's Order indicated that the Court would award attorneys' fees and costs "arising from the debtor's failure to appear at the initial examination." Earlier in this Opinion, we characterized the Creditor's submission of its Statement as in "apparent compliance" because it is clear to us that the Creditor's Statement included a great deal of time spent on matters *not* "arising from the debtor's failure to appear

---

**6.** Reference to "Items" in Creditor's Statement shall be in order beginning with the first entry dated November 15, 1984. See Appendix A.

at the initial examination." The description of services includes time for the following activities which did not "arise" from the Debtor's failure to appear:

    (1) preparation and revision of Motion for Summary Denial of Discharge (Items 1 and 2);

    (2) preparation and revision of Motion to Vacate Discharge Order and Motion for Extension of Time (Items 5, 7, 8 and 9).

Furthermore, Items 10, 12, 20, 21, and 22 refer to time spent on activities in connection with the generic term "motions." Items 23 and 25 include 16.3 hours for two (2) attorneys to prepare for and attend the hearing on January 3, 1985, at which issues other than the Motion for Contempt were under consideration.

We do not comprehend how the Creditor can justify, in the remotest sense, attorneys' fees for all these activities as having arisen from the Debtor's failure to attend the initial examination. We find that in this case, the only compensable services are those for the preparation of the Motion for Contempt and preparation for and attendance of the hearing on only the contempt issue.[7] We believe that the Creditor should be compensated for two and one half (2½) hours for preparation of the Motion, one (1) hour preparation for the hearing, and one and one half (1½) hours appearance at the hearing for one attorney at the hourly rate of $90.00 for a total of $450.00 in attorneys' fees. We feel that even this award is more than generous when viewed against the circumstances of this case. The time allowed is more than we feel would be necessary in light of the Creditor's inexperience with the Bankruptcy Court. However, while the hourly rate is less than the Creditor's customary rate, we believe it reasonable because the Creditor's unfamiliarity with bankruptcy appears to have decreased each attorney's efficiency.[8] As was aptly stated in *Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir.1983):

> A fee applicant cannot demand a high hourly rate—which is based on his or her experience, reputation, and a presumed familiarity with the applicable law—and then run up an inordinate amount of time researching that same law. Double dipping, in any form, cannot be condoned. Our cases supply no authority for rewarding non-stop meter running in law offices.

Moreover, we were distressed to note the Creditor's abandonment of billing judgment in its request of $7,350.00 for attorneys' fees. We find the expenditure of forty-nine (49) hours of attorneys' time allegedly arising out of the Debtor's failure to appear on one occasion, with an indication that only one week's extension was necessary, is just not reasonable. The case *sub judice* is a model in terms of the excessive number of hours expended bearing no correlation to the result. The only result was that the Debtor was found in contempt and ordered to appear for examination "at a date to set by the Court upon application of aforementioned Creditor." In fact, the result and effect of the Creditor's Motion for Contempt was to delay the actual examination by seven (7) months instead of the

---

7. We add that it does appear that the Creditor had other avenues available to it other than bringing a Motion for Contempt. Although the Debtor was remiss in waiting until the eleventh hour to request a postponement of his examination, it was his first such request and it was only for a one week continuance. The Creditor could have rescheduled the examination. Although we do recognize that it was the Creditor's right to seek sanctions against the Debtor, we do not wish to condone such practices, as they can be, as the instant matter exemplifies, wasteful of the time and energy of all involved, including scarce judicial resources. We also do not wish to express our approval of the propriety of Judge King's Order of April 29, 1985, which seems to impose excessive sanctions under the circumstances. However, in ruling on this Motion, we have, of course, assumed that this Order was entirely appropriate.

8. For example, we note that the Creditor placed phone calls to the Clerk's Office on more than four (4) separate dates and apparently more than one call per day (Items 3 and 4), apparently to obtain information about procedures in this Court. Further, the Statement is replete with time spent in meetings among attorneys, indicating duplication of efforts, inefficiency, and/or lack of expertise.

one-week continuance requested by the Debtor. This Court further notes that the nature of the legal problem is not particularly difficult or novel, such as would justify this kind of expenditure of resources. We take seriously our charge to "make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary," *Ursic v. Bethlehem Mines, supra,* at 677, *quoting* from *Hensley · v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 1939–40, 76 L.Ed.2d 40 (1983).

Another factor which adds to our concern over the lack of billing judgment is that the Creditor, in acting *pro se,* had no client to report to or to be concerned about respecting the amount of time and effort expended in pursuit of its Contempt Motion. This Court is hard-pressed to believe that the Creditor would have no qualms in billing a client $7,350.00 for the efforts of *four* (4) attorneys in pursuit of a Contempt Motion. To paraphrase a statement made by the Third Circuit in *Ursic v. Bethlehem Mines, supra,* at 678, "[b]illing judgment is a consideration well known to the responsible bar; it should not disappear" when the applicant acts *pro se.*

As set forth above, this Court will not countenance the expenditure of an excessive number of hours. Moreover, we are even more convinced of the propriety of viewing the services *in toto* and placing the value of $450.00 upon them when we look at all of the circumstances of the case

*sub judice.* Although not a factor in our decision herein, it is evident to this Court that the Creditor's decision in filing a Motion for Contempt was at least partially motivated by animosity toward the Debtor, arising out of the Debtor's having filed for bankruptcy and thereby discharging the large debt owed to the Creditor. The Creditor's almost unbelievably excessive request for attorneys' fees of $7,350.00, especially in view of our examination of the Statement submitted, appears to be a manifestation of the Creditor's determination to collect monies of some amount from the Debtor. We certainly do not approve of such conduct, which might be termed as harassment.

We now turn to the request for costs in the amount of $344.47. Our review of the Creditor's itemization of costs and disbursements reinforces our impression that the Creditor seeks to wring out of the Debtor every penny it can under the auspices of its Contempt Motion.[9] Nevertheless, this Court's decision to award $46.25 in costs is based solely on our finding that the only legitimate cost which arose out of the Debtor's failure to appear at the initial examination is the $46.25 fee for the Court Reporter appearing on November 15, 1985. Having chosen a particular course of action, *i.e.,* filing the Motion for Contempt, the Creditor must bear the costs and expenses of "doing business," *e.g.,* xeroxing, travel expenses, postage, and research.

An appropriate Order is attached.

## APPENDIX A

| | Date | Description | Attorney | Hours |
|---|---|---|---|---|
| **ITEM NO.** | | | | |
| 1 | 11/15/84 | Meetings with H. Levinson and S. Yarnell; telephone call from Bluestein; take deposition of K. Davis; prepare motion for summary denial of discharge with S. Yarnell; legal research. | WKD | 3.4 |
| 2 | 11/15/84 | Prepare for deposition; telephone conversation with Bluestein; meetings with H. Levinson and W. Doak; research, prepare and revise motion for summary denial of discharge; review file. | SVY | 4.8 |

**9.** See Appendix A. In this case, seeing is believing.

| ITEM NO. | Date | Description | Attorney | Hours |
|---|---|---|---|---|
| 3 | 11/20/84 | Telephone call to Bankruptcy Court Clerk; review file; meeting with S. Yarnell. | WKD | .4 |
| 4 | 11/20/84 | Meeting with W. Doak and H. Levinson Re: Bankruptcy Motions; telephoned Bankruptcy Court Clerk's Office. | SVY | 1.3 |
| 5 | 11/23/84 | Review file; prepare motion to vacate discharge order, motion for contempt and motion for extension of time. | SVY | 2.5 |
| 6 | 11/23/84 | Review case with W. Doak and S. Yarnell. | HSL | .6 |
| 7 | 11/26/84 | Research and revise motions to vacate order, contempt and extention of time. | SVY | 1.8 |
| 8 | 11/27/84 | Review and revise motions; discuss with H. Levinson. | SVY | .4 |
| 9 | 11/28/84 | Draft and supervise filing of motions for contempt and for extension of time. | SVY | 1.6 |
| 10 | 11/28/84 | Meeting with S. Yarnell Re: Motions. | MAS | .1 |
| 11 | 11/30/84 | Meeting with R. Sprague; telephone call to M. Sternlicht. | SVY | .4 |
| 12 | 11/30/84 | Meeting with S. Yarnell Re: Motions; telephone calls to Bankruptcy Court Clerk Re: Motions. | MAS | .3 |
| 13 | 12/3/84 | Meetings with S. Yarnell and H. Levinson. | WKD | .6 |
| 14 | 12/3/84 | Telephone calls to Bankruptcy Court Clerk; meeting with M. Sternlicht. | SVY | 1.7 |
| 15 | 12/5/84 | Meeting with H. Levinson; review correspondence; draft letter to Silverman. | WKD | .6 |
| 16 | 12/7/84 | Meeting with K. Davis and S. Yarnell; draft letter to Court Reporter. | WKD | .5 |
| 17 | 12/18/84 | Meeting with W. Doak. | SVY | .1 |
| 18 | 12/18/84 | Meeting with S. Yarnell. | WKD | .1 |
| 19 | 12/28/84 | Meeting with S. Yarnell. | WKD | .2 |
| 20 | 12/31/84 | Review motion; meeting with W. Doak Re: Certificate of No Response. | SVY | .6 |
| 21 | 1/2/85 | Meetings with S. Yarnell; prepare Certificate of No Response; telephone calls to Bankruptcy Court; file papers at Bankruptcy Court; prepare for argument of motions. | WKD | 4.4 |
| 22 | 1/2/85 | Prepare Certificate of No Response; file Certificate with Clerk; review motions; prepare for hearing. | SVY | 5.9 |
| 23 | 1/3/85 | Prepare for hearing; attend call of calendar and hearing. | SVY | 8.1 |
| 24 | 1/3/85 | Meeting with S. Yarnell and W. Doak Re: Hearing. | MAS | .4 |
| 25 | 1/3/85 | Prepare for and attend hearing on motions for contempt and denial of discharge. | WKD | 8.2 |

(HSL is Hillel S. Levinson; MAS is Mark A. Sternlicht; WKD is William K. Daok; SVY is Stephen V. Yarnell; All of these are attorneys at Sprague, Levinson & Thall.)

2. The total amount of attorney time itemized above is 49 hours. The customary billing rate for eacha dnevery attorney in the creditor firm is $150 per hour. Therefore, the reasonable value of the attorney time expended as a result of the debtor's failure to appear at his initial examination is $7350.00

3. The following is an itemization of the costs and disbursements of the creditor incurred as a result of the debtor's failure to appear at his initial examination:

| Date | Explanation | Amount |
|------|-------------|--------|
| 11/15/84 | Bus Fare-Fed. Ct. | 1.70 |
| 11/15/84 | Computerized Research | 44.04 |
| 11/15/84 | Xerox-pleadings | 1.76 |
| 11/15/84 | Bus Fare-Fed. Ct. | 1.70 |
| 11/15/84 | Xerox-order | .16 |
| 11/15/84 | Xerox-notice of motion and order | 12.80 |
| 11/15/84 | Xerox-notice of motion and order | .96 |
| 11/16/84 | Xerox-notice of motion and order | 2.56 |
| 11/16/84 | Postage-S. Raslavich | .71 |
| 11/16/84 | Xerox-letter | .64 |
| 11/16/84 | Xerox-memo | .16 |
| 11/16/84 | Postage-S. Silverman | .71 |
| 11/19/84 | Xerox-article | 1.28 |
| 11/21/84 | Xerox-Tax ref. | 4.48 |
| 11/21/84 | Xerox-Tax ref. | 14.08 |
| 11/26/84 | Xerox-affidavit | 1.92 |
| 11/27/84 | Xerox-pleadings | .96 |
| 11/27/84 | Xerox-order | .48 |
| 11/27/84 | Xerox-motions | 3.36 |
| 11/27/84 | Xerox-pleading | 2.88 |
| 11/28/84 | Xerox-letter | 1.28 |
| 11/28/84 | Xerox-motion | 21.76 |
| 11/28/84 | Postage-S. Raslavich | 1.05 |
| 11/28/84 | Xerox-motion | 6.40 |
| 11/28/84 | Bus Fare-Bankruptcy Ct. | 1.70 |
| 11/28/84 | Xerox-motion | 10.24 |
| 11/28/84 | Xerox-memo | .64 |
| 11/28/84 | Postage-S. Silverman | 1.05 |
| 11/28/84 | Xerox-motion | 19.04 |
| 11/30/84 | Mileage-11/9/84 | 13.60 |
| 12/05/84 | Xerox-order/cos | 2.24 |
| 12/06/84 | Xerox-letter | .80 |
| 12/06/84 | Postage-S. Silverman | .20 |
| 12/06/84 | Postage-S. Raslavich | .20 |
| 12/06/84 | Bus Fare-Fed. Ct. | 1.70 |
| 12/06/84 | Xerox-letter | .32 |
| 12/06/84 | Xerox-article | .32 |
| 1/02/85 | Postage-S. Raslavich | .20 |
| 1/02/85 | Postage-S. Raslavich | .20 |
| 01/02/85 | Bus Fare-Fed. Ct. | .85 |
| 01/02/85 | Xerox-motion | 8.64 |
| 01/02/85 | Xerox-pleadings | 1.12 |
| 01/02/85 | Xerox-deposition | 2.08 |
| 01/02/85 | Xerox-letter | .80 |
| 01/03/85 | Bus Fare-Fed. Ct. | 1.70 |

| Date | Explanation | Amount |
|------|-------------|--------|
| 01/03/85 | Xerox-Cases | .25 |
| 01/07/85 | Ct. Reporter-11/15 dep/K. Davis | 46.25 |
| 03/12/85 | Ct. Reporter-1/3/85 | 102.50 |

The total of costs and disbursements extended as a result of the debtor's failure to appear for his initial examination is $344.47

4. The total fees and costs incurred by the creditor as a result of the debtor's failure to appear for initial examination is $7,694.47.

Respectfully submitted,
SPRAGUE, THALL & ALBERT

Date: 8/5/85

By: William K. Doak
RICHARD A. SPRAGUE
BRUCE L. THALL
MARK A. STERNLICHT
WILLIAM K. DOAK
PATRICIA A. CAREY

Suite 400, Wellington Building
135 South 19th Street
Philadelphia, Pa. 19103
(215) 561-6781