In re Robert G. ZEPECKI, Debtor.

Bankruptcy No. 96–30125M.

United States Bankruptcy Court,
E.D. Arkansas,
Jonesboro Division.

Sept. 24, 1998.

---

R. David Lewis, Little Rock, AR, for Debtor.

Guy Brinkley, Piggott, AR, for Bonnie Kania and Bonnie L. Harlan.

James C. Luker, Wynne, AR, Trustee.

Beckett & Lee LLP, MBNA America & Associates, Malvern, AR, for The Bank of New York (Delaware).

## ORDER

JAMES G. MIXON, Chief Judge.

This case is before the Court to determine the amount of attorneys fees and costs that should be assessed Fred Hart, attorney for Robert G. Zepecki ("Debtor"), for Hart's failure to appear at a scheduled hearing on

October 21, 1997, in Jonesboro, Arkansas. Having heard testimony on November 21, 1997, February 23, 1998, and June 16, 1998, as to the amount of fees due to Jim Luker, the trustee, and Guy Brinkley, attorney for Bonnie Harlan, a creditor in this case, the Court took the matter under advisement.

This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(A), and the Court has jurisdiction to enter a final judgment in the case.

## FACTS

Relevant to a determination of how much Hart will pay are the following facts. The Debtor filed his voluntary petition under the provisions of chapter 7 of title 11 on February 7, 1996, and Luker was appointed trustee. The Debtor converted his case to chapter 13 on March 22, 1996. After a hearing on Harlan's motion to convert, the Court converted the Debtor's case back to chapter 7 by order filed August 16, 1996. Luker was again appointed trustee.

The Debtor filed a timely notice of appeal on August 23, 1996,[1] and requested the bankruptcy court to stay its order pending the appeal. The Court granted the stay, conditioned upon the Debtor's posting of a $150,000.00 corporate supersedeas bond. No bond was posted and the order of conversion remained in effect.

Thereafter, Harlan filed motions for extension of time to object to discharge/dischargeability and for relief from stay in regard to marital property. Also filed were motions by Luker (hereinafter "Trustee") to extend time to object to discharge and to compel the Debtor to attend a first meeting of creditors. These matters were set for hearing at 9:30 a.m. on October 21, 1997, in Jonesboro, Arkansas.

Notice of the hearing was sent to the Debtor and to Hart, but neither appeared at the designated time and place. The transcript of the proceedings on October 21 reveals that the Court called the case at about 9:45 a.m., at which time the Trustee announced that no one was present for the Debtor or for creditor Harlan. The Trustee explained to the Court that the Debtor had lodged a motion for contempt against him for continuing to administer the case while the conversion was on appeal,[2] and that he was therefore unsure how or indeed whether to proceed. The Court declared a recess from 9:50 a.m. to 10 a.m. to attempt to reach Hart by telephone.

Upon reconvening, the Court reported on the record that Hart had answered his telephone at his office and had explained that, while he did receive notice of the hearing, he did not appear because to do so would be "asinine." Hart's theory was that the motions set for hearing were lacking in merit because of the pending appeal of the Court's order converting the case.

Continuing on the record, the Court rescheduled hearings upon the motions of the Trustee and Harlan and announced that it would also consider a motion to recover costs to compensate the Trustee for his futile appearance. The transcript of the hearing reflects that some intervening cases came before the Court before Brinkley, Harlan's attorney, was able to bring his presence to the Court's attention. Apparently not having been present at the earlier colloquy between the Trustee and the Court, Brinkley was advised that all matters had been reset and was invited to file a motion for attorneys fees and costs as sanctions against the Debtor and Hart.

Subsequently, the Court issued an order to show cause why Hart should not be sanctioned for costs incurred by the opposing parties who had appeared at the October 21 hearing. Both the Trustee and Brinkley filed motions asking for attorney's fees and expenses incurred at the October 21 hearing. The Debtor responded that the Court had no jurisdiction over the motions set for hearing on October 21 because of the pending appeal. The Debtor further asserted that the pres-

---

1. The decision to convert the case was affirmed by the District Court on March 13, 1997, and by the Eighth Circuit Court of Appeals on March 30, 1998. *Zepecki v. Harlan*, 141 F.3d 1172 (8th Cir.1998).

2. This motion was denied by order entered November 26, 1997, by the Clerk of the Court for the Eighth Circuit Court of Appeals.

ences of the Debtor and Hart were not necessary for the Court to rule on the motions under consideration; therefore, any delay was the fault of the Court and/or the other parties.

The Trustee, Brinkley, the Debtor, and Hart appeared at the re-scheduled hearing on November 21, 1997, at 1:30 p.m. in Little Rock, Arkansas. According to the transcript of the proceedings, the Court called the case at 1:40 p.m. Under consideration were the four previously continued motions, the order to show cause, and the motions for attorneys fees and expenses filed by the Trustee and Brinkley. The Court commenced by allowing Hart time to explain why he failed to appear at the October 21 hearing. Hart argued again that the Court had no jurisdiction because of the pending appeal of the Court's conversion order and that his presence was not needed at the hearing to dispose of the matters because Hart and the Debtor had planned not to oppose the motions. Hart admitted that the Debtor had not posted a supersedeas bond staying the order converting the case.

The Trustee and Brinkley, in turn, briefly discussed the extra time they expended that had been necessitated by the Debtor's and Hart's failure to appear. Without ruling on the matter of attorney's fees, the Court proceeded to the other matters on the docket, beginning with the Trustee's motion to extend time to file an objection to discharge. When asked if he had objections to the Trustee's motion, Hart began giggling and behaving in an inappropriate manner.

At that point, the Court removed Hart as the Debtor's attorney and continued the other matters until the Debtor could engage another attorney. The hearing on November 21, 1997, was re-scheduled for February 23, 1998, in Jonesboro, Arkansas, at which time Hart failed to appear. The Court awarded Brinkley $1000.00 in fees to be paid by Hart and $400.00 in fees to be paid by the Debtor. The Court awarded the Trustee a total of $725.00 in attorney's fees, with the Debtor to pay $125.00 and Hart to pay the remaining $600.00.

On March 5, 1998, Hart moved for a new trial or hearing on the subject of attorney's fees on the basis that he had not received notice of the February 23 hearing date. The Court granted the motion for new hearing on the matter of attorney's fees as related to Hart's obligation because Hart did not receive notice. The matter was set for hearing June 16, 1998, in Jonesboro.

At that hearing, Brinkley testified that as a result of Hart's failure to appear, Brinkley needlessly expended the following periods of time: two hours of travel time between Piggott, his home, and Jonesboro and one hour waiting to have the case called for a total of three hours on October 21; eight hours of travel time between Piggott and Little Rock and one hour in court on November 21 for a total of nine hours; two hours of travel time between Piggott and Jonesboro and one hour of court on February 23 for a total of three hours; and two hours of travel time between Piggott and Jonesboro and four hours of time (excluding a one and one-half hour lunch recess) during which he either waited for the case to be called or participated in the case on June 16 for a total of six hours. Brinkley further testified that, other than dealing with matters related to the Debtor and his client, Harlan, he had no other business before the Court on the days in question. Brinkley stated that his customary fee is $125.00 an hour.

The Trustee testified that his hourly rate is also $125.00. He requested attorneys fees for courtroom and travel time from his home in Wynne, Arkansas, to and from Jonesboro. He testified that time expended on the Zepecki case totaled two hours on October 21, one hour on November 21, and one hour on February 23. He also requested attorneys fees for the one hour spent in drafting a pleading requesting attorneys fees and in telephone conferences regarding scheduling of the various hearings to determine attorneys fees.

The Trustee, who resides one hour's drive from Jonesboro, explained that he arrived at the two-hour figure for October 21 by totaling the number of hours expended in a typical divisional day of bankruptcy court added to travel time to and from Jonesboro, usually six to eight hours. He then divided this

number by the number of cases he routinely deals with on such a day, which is three to four. Thus, to arrive at his October 21 figure, he divided his total number of hours spent in court and travel time by the number of cases with matters pending before the Court on that day.

The Court takes judicial notice that the distance from Piggott to Jonesboro is 53 miles and from Piggott to Little Rock is 184 miles.

## DISCUSSION

The provisions of Title 11 imbue the Bankruptcy Court with broad powers to implement its policies. The Code specifically provides that the Bankruptcy Court may take "any action or [make] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105(a)(1994).

■ · Courts have interpreted this provision as giving the bankruptcy court the power to regulate those who appear before it. *Walton v. Jones (In re Shirley)*, 184 B.R. 613, 617 (Bankr.N.D.Ga.1995). See also, 2 Collier on Bankruptcy ¶ 105.04[7] (Lawrence P. King ed., 15th ed. rev.1998). Such regulation may entail sanctions for abuse of process or other harms. *Caldwell v. Unified Capital Corp. (In re Rainbow Mag., Inc.)*, 77 F.3d 278, 284 (9th Cir.1996).

■ Sanctions pursuant to the court's inherent powers may take the form of an assessment against the offending party for costs and attorney fees. *In re Spectee Group, Inc.*, 185 B.R. 146, 155 (Bankr. S.D.N.Y.1995) (court may require payment of other party's attorneys fees by one who has acted vexatiously, wantonly, or oppressively) (citing *Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir.1986)); *In re Bove*, 29 B.R. 904 n. 1 (Bankr.D.R.I.1983) (citing *Spicer v. Woodhouse (In re Woodhouse)*, 17 B.R. 275 (Bankr.S.D.Ohio 1982)) Failure to appear at bankruptcy proceedings where appearance is required has frequently prompted the court to award or withhold attorney's fees as sanction. *See, e.g., In re Irvin*, No. 90 C 5933, 1991 WL 71001, (N.D.Ill. Apr. 30, 1991) (affirming bankruptcy court's ruling that debt-

or's attorney forfeit fees for failing to appear at first meeting of creditors); *In re Hailey*, 21 B.R. 453 (Bankr.N.D.Ga.1982) (sanctioning debtor's attorney by requiring fee forfeiture for failure to appear at first meeting of creditors).

■ The cases considering attorneys fee awards most frequently interpret 11 U.S.C. § 330, the provision allowing the court to compensate professionals from estate funds if services provided by those professionals are reasonable and necessary. Although the attorneys fees and costs in this case are being assessed pursuant to the court's powers under section 105, the "reasonable and necessary" standard is a useful guideline in determining an appropriate award to each recipient. *In re Spectee Group, Inc.*, 185 B.R. 146, 160 (Bankr.S.D.N.Y.1995) (ruling that necessary and reasonable standard applies to award of attorneys fees as a sanction pursuant to the court's inherent power); *In re Woerner*, 67 B.R. 685, 686–87 (Bankr. E.D.Pa.1986) (finding reasonableness standard applicable to fees awarded as sanction for Debtor's contempt in failing to appear at first meeting of creditors).

■ Bankruptcy courts awarding fees must consider whether the fee awards are commensurate with fees for professional services in non-bankruptcy cases. *Mann v. McCombs (In re McCombs)*, 751 F.2d 286, 288 (8th Cir.1984). The court may rely upon its own knowledge of customary rates and its own experience in determining reasonableness and necessity of attorney fees. *In re Carter*, 101 B.R. 170, 172 (Bankr.D.S.D.1989) (citing *In re Gulf Consol. Servs., Inc.*, 91 B.R. 414, 415 (Bankr.S.D.Tex.1988)). The typical sanction for attorneys fees is the lodestar amount; that is, the number of hours expended multiplied by the hourly rate. *In re Spectee Group, Inc.*, 185 B.R. 146, 160 (Bankr.S.D.N.Y.1995) (citing *Wood v. Brosse*, 149 F.R.D. 44, 52 (S.D.N.Y.1993); *Caisse Nationale de Credit Agricole–CNCA, N.Y. Branch v. Valcorp, Inc.*, 28 F.3d 259, 266–67 (2d Cir.1994)).

■ Applicants requesting attorneys fees should be compensated for their travel time at their full hourly rate if their travel time

was necessary. *In re Yankton College,* 101 B.R. 151, 159 (Bankr.D.S.D.1989) (conceding that substantial travel time may be necessary in rural state where court location and attorney residence do not coincide); *In re Carter,* 101 B.R. at 173; *In re Frontier Airlines,* 74 B.R. 973, 979 (Bankr.D.Colo.1987). Attorneys who serve several clients in one trip must prorate travel time and expenses between bankruptcy cases on which they are working. *In re Carter,* 101 B.R. at 173.

■ Attorneys seeking reimbursement for travel expenses are entitled to full reimbursement. *In re Automobile Warranty Corp.,* 138 B.R. 72, 78 (Bankr.D.Colo.1991) (citing *In re Microwave Products of America, Inc.,* 104 B.R. 900, 908 (Bankr.W.D.Tenn. 1989); *In re Pothoven,* 84 B.R. 579, 585 (Bankr.S.D.Iowa 1988)). Necessary mileage expenses are reimbursable at the existing rate for government employees. *In re C & J Oil Co., Inc.,* 81 B.R. 398, 405 (Bankr. W.D.Va.1987).

■ Based on these guidelines supplied by the Bankruptcy Code and applicable cases, the following fees are reasonable and necessary and will be awarded as sanctions in this case. The Trustee and Brinkley have requested their regular hourly rate of $125.00, and the Court finds that this figure is customary in this region and commensurate with the experience of the two attorneys. The lodestar amount, typically awarded in sanction cases, is an appropriate award to the Trustee and to Brinkley. All requested travel time will be compensated at the regular billing rate of the two attorneys because both reside in towns other than the locations where bankruptcy court regularly convenes, and both were compelled to travel some distances from their home as a result of Hart's failure to appear.

■ Brinkley will be awarded two hours of travel time and one hour of courtroom time for the October 21 hearing at which Hart did not appear. Brinkley will be compensated for eight hours of travel time and one hour of courtroom time necessitated by attending the November 21 hearing that was re-scheduled in Little Rock after Hart failed to appear at the October 21 hearing in Jonesboro. Similarly, Hart must compensate Brinkley for two hours of travel time and four hours of courtroom time expended by Brinkley at the June 16 hearing. Not having received notice of the February 23 hearing, Hart will not be charged for his failure to appear on that day.

Because Brinkley did not have other cases before the Court on the days in question, Hart must pay Brinkley for the entire 18 hours expended, or $2250.00, less $400.00 paid Brinkley by the Debtor. Travel expenses incurred by Brinkley will be paid at the federal employee rate of 31 cents a mile. Mileage expenses to be reimbursed include one round trip between Piggott and Little Rock for a total of 368 miles and two round trips between Piggott and Jonesboro for a total of 212 miles. Hart is therefore ordered to reimburse Brinkley $178.87 in travel expenses and $1850.00 in attorneys fees.

■ Hart must pay the Trustee for two hours of his time on October 21, one hour of courtroom time on November 21, and one hour spent drafting pleadings and scheduling tasks necessitated by Hart's failure to appear. The Court will not award the Trustee attorneys fees for Hart's failure to appear on February 23, but Hart must pay the Trustee for two hours work on June 16, this period of time having been arrived at by the same pro rata formula used to compensate the Trustee for two hours of time on October 21. Thus, Hart is sanctioned for six hours at $125.00 an hour, or $750.00 due to the Trustee, less $125.00 paid to the Trustee by the Debtor, for a total of $625.00.

It must be emphasized that Hart's failure to appear on October 21 directly precipitated three subsequent hearings that would otherwise have been completely unnecessary. He deliberately squandered judicial resources while displaying an obvious disregard for the time constraints of his colleagues. Furthermore, Hart's failure to appear effected an unnecessary delay of approximately four months as to the determination of the substantive issues before the Court on October 21. Finally, Hart's failure to appear was, by his own admission, a willful act calculated to communicate his contempt for these proceed-

ings, which he openly characterized to the Court as "asinine."

Therefore, the Court sanctions Hart $1850.00 in attorneys fees and $178.87 in travel expenses to be paid directly to Brinkley and $625.00 in attorneys fees to be paid directly to the Trustee. Hart shall have thirty days from the entry of this order to remit these amounts to Brinkley and to the Trustee.

IT IS SO ORDERED.