**In the Matter of James Riley WALLACE, Debtor.**

**WESLEY MEDICAL CENTER, Movant,**

v.

**James Riley WALLACE, and Keith B. Koenigsdorf, Respondents.**

Bankruptcy No. 83–03297–W–13.

United States Bankruptcy Court, W.D. Missouri, W.D.

Dec. 20, 1984.

Paul A. Rueschhoff, Prairie Village, Kan., for movant.

Keith B. Koenigsdorf, Wohlner & Hoskins, Kansas City, Mo., for respondents.

REPORT AND RECOMMENDATION OF BANKRUPTCY COURT TO DISTRICT COURT THAT RESPONDENTS BE ADJUDGED IN CONTEMPT OF COURT FOR FAILURE AND REFUSAL TO OBEY THE COURT'S ORDER OF JULY 25, 1984, 46 B.R. 807, AND SUBJECTED TO APPROPRIATE COERCIVE MEASURES TO ENFORCE COMPLIANCE

DENNIS J. STEWART, Bankruptcy Judge.

During the early pendency of the within chapter 13 proceedings, the garnishee in garnishment proceedings in a Kansas state court, the Home Shelter Insurance Company, paid certain monies totaling $25,000.00 to the clerk of the bankruptcy court rather than in response to the garnishment proceedings in which the Wesley Medical Center was garnishor. After an adversial-type hearing in the bankruptcy court, this court directed that the clerk of the bankruptcy court turn the monies over to the debtor, on condition that the monies be used to pay creditors under the chapter 13 plan, making the following observations in its order of February 1, 1984:

"Neither party questions the fundamental proposition that, under the provisions of § 1306(a) of the Bankruptcy Code, the money should properly be considered as part of the chapter 13 estate. But the plain dictates of § 1306(b) are to the effect that, '[e]xcept as provided in a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate.' Although no authority has been suggested which elucidates the application of that section to this case, its plain and unambiguous letter compels this court to direct the clerk to turn over the money to the debtor.

This result is thoroughly consonant with the two main purposes of chapter 13—to permit a debtor to remain in sole and exclusive possession of his property and to permit the debtor *voluntarily* to make payments to his creditors. Accordingly, as the literal terms of section 1306(b), *supra*, make manifest, the chapter 13 trustee is justified in taking over assets of the estate only in accordance with the terms of a confirmed plan.

"The chapter 13 court, however, is required to take into consideration, in confirming a plan and determining the right to discharge, the assets owned by a chapter 13 debtor. This requirement is imposed both by the provisions of § 1325 of the Bankruptcy Code and by the decision of the United States Court of Appeals for the Eighth Circuit in *In re Estus*, 695 F.2d 311 (8th Cir.1982). Consequently, the court must withhold the discharge sought by the debtor unless his plan is now amended to provide for distribution to creditors of the sum of money now being paid to him, less the contingent fee payable from that sum to his attorney and any other exempt amounts."

Although the governing law holds an order of the bankruptcy court not to be final for a period of ten days from and after its entry, the debtor and counsel obtained payment over of the money from the bankrupt-cy clerk on the same day that the court's order was issued.[1] The Wesley Medical Center then timely appealed the prematurely-executed order. Although the court had, on the date of issuance of its order, upon discovery that the clerk of the bankruptcy court had paid the money out to debtor's counsel, advised counsel that the money had been prematurely paid to it and should not be further distributed, the money was in fact further distributed.[2] After the taking of the appeal by Wesley Medical Center and the court's continuing efforts to resecure possession of the money, the debtor voluntarily dismissed his chapter 13 petition (as is his "absolute right" according to the governing law[3]) and refused to restore the money on the grounds that the bankruptcy court had been divested of any and all jurisdiction.

Bankruptcy court jurisdiction continued to exist, however, despite the paying out of the money by mistake. This court outlined the basis of its continuing jurisdiction in its order of April 6, 1984, as follows:

"During the pendency of the debtor's chapter 13 proceedings, some $25,000 was paid into the registry of the court. This gave the court jurisdiction to determine the proper disposition of the monies which had been paid into its custody. A court of equity, such as the bankruptcy court, always has jurisdiction to deter-

---

**1.** See Rule 7062 of the Rules of Bankruptcy Procedure to the effect that "no execution shall issue upon a judgment nor shall proceedings be taken for its enforcement until the expiration of 10 days after its entry."

**2.** See the order of July 25, 1984, to the effect that:

"Because, under that section, dismissal is an absolute right of the debtor, the court had to grant the motion, but, in doing so, it informed counsel, both the counsel presenting the motion to the court on February 10, 1984, and Keith B. Koenigsdorf, by telephone, that this dismissal could not excuse the holding of the monies pending an order of the court to repay them into the court pending the appeal. Fi-nally, in the hearing on the issue of stay pending appeal, the court directed the turnover of the monies back into court, but counsel for the debtors stated that, prior to the dismissal, his law firm had paid those monies over to the debtor."

**3.** See House Report No. 95–595, 95th Cong., 1st Sess. (1977) 428, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6384 to the following effect: "Subsection (b) [of section 1307 of the Bankruptcy Code] *requires the court*, on request of the debtor, to dismiss the case if the case has not already been converted from chapter 7 or 11." (Emphasis added.)

mine the proper recipients of a fund of money in its custody. 'The court, having possession of the property, has an ancillary jurisdiction to hear and determine all questions respecting the title, possession, or control of the property. In the courts of the United States this ancillary jurisdiction may be exercised though it is not authorized by any statute. The jurisdiction in such cases arises out of the possession of the property, and is exclusive of the jurisdiction of all other courts, although otherwise the controversy would be cognizable in them.' *Murphy v. John Hofman Co.*, 211 U.S. 562, 570 [29 S.Ct. 154, 157, 53 L.Ed. 327] (1909). 'Property in the custody of a court of equity for administration is always held by it in trust for those to whom it rightfully belongs. The jurisdiction to inquire and determine who the lawful owners of it are and to that end to call before it all claimants by a reasonable notice or order to present their claims to the court within a reasonable time, or to be barred of any right or interest in the property in its custody, or in its proceeds, is a power inherent in every court of equity, incidental and indispensable to the authority to administer and to distribute its proceeds.' *In re Rochford*, 124 F.2d [Fed.] 182, 187 (8th Cir.1903). And the court having this custody, regardless of the pendency of other proceedings, has the power to issue injunctive and other extraordinary orders in order to protect the res in its actual or constructive possession. 'In its exercise of its jurisdiction over the debtor's property, the court had power to issue injunctions and all other writs necessary to protect the estate from interference, and to ensure its orderly administration.' *Diners Club, Inc. v. Bumb*, 421 F.2d 396, 398 (9th Cir.1970). Thus, even in the absence of a pending chapter 13 proceeding a court having a res in its possession, actual or constructive, would retain jurisdiction to administer and distribute that res, for '[t]his ancillary jurisdiction ... flows not only from the express provisions of statute, ... but from inherent power of a court of equity to protect its control of a res in its custody.' *Id.*"

Accordingly, the movant Wesley Medical Center persisted with efforts to have the money returned to the bankruptcy court. These efforts culminated in the bankruptcy court's issuing its report and recommendation on May 25, 1984, to the district court that the debtor be adjudged in contempt of court for failure and refusal to restore the money to the bankruptcy court. In that report and recommendation, this court made the following pertinent observations:

"The facts above found seem fully to warrant a conclusion that the bankruptcy court was used by the debtor as a conduit to wrest the monies here in question from the garnishment action brought by the Wesley Medical Center and place them in his own hands, free of any such claims, where they could be, as they were, quickly spent for other purposes. This is the only available and reasonable explanation for the debtor's decision to dismiss these chapter 13 proceedings soon after receiving the $6,554. The explanation which has been testimonially stated by him and his wife—that they had the ability to perform the chapter 13 plan on February 1, 1984, but not on February 10, 1984,—is not borne out by the evidence. The debtor's own testimony shows that he was employed on the date of the hearing with the same employer and on terms and conditions similar to those under which he was employed as of February 1, 1984, and as of the date when he proposed under his plan to pay $125 per month for the benefit of his creditors. The threat of a future layoff which he alluded to conclusionarily had not yet materialized. Further, unless his counsel acted without his authority in effecting the voluntary dismissal of the chapter 13 proceedings on February 10, 1984, the debtor's credibility and that of his wife are placed in question by their statement that they did not make the decision to dismiss until 'a week or two later.'

"The contumacious character of their conduct is further established by the fact

that it included violation of two of the court's orders. Even if it can be assumed, as the debtor and his counsel insist, that the debtor was unaware of the court's direction to counsel on February 1, 1984, that the money should not be distributed or spent, the files and records of the court show that the debtor received a copy of the court's order of February 1, 1984. He admittedly learned of it as early as February 3, 1984. The conditions of that order required that the money be devoted to the chapter 13 plan, which was to be amended to provide for its distribution to creditors. The debtor therefore could, in consonance with this order, have lawfully accepted the monies only with an intention to comply with the order. That he had no such intention is evidenced by his dismissing the chapter 13 case as soon as the money had, on February 10, 1984, been transmitted to him and his wife."

Subsequently, because the dismissal by the debtor of the underlying chapter 13 proceedings had removed any and all basis for the court's initial order directing the turnover of the money to the debtors, this court issued its order on July 25, 1984, setting that order aside and instead directing return of the monies to the registry of the court. In that order, the court made the following pertinent observations:

"it has been held that it is appropriate for a court to grant relief from its former judgment. The current rules of bankruptcy and civil procedure recognize 'the inherent power of a court to grant relief when fraud has been perpetrated upon it. This inherent power is to be exercised by the court upon whom the fraud is practiced.... The defrauded court may act ... upon its own motion, and even though the prevailing party opposes the proceeding and the party cast in judgment does not desire to open the judgment.... Where fraud upon the court is established, the court has ample power to afford appropriate relief. Apart from any intervening equities, where the guilty party recovering judgment was plaintiff in an "equity" suit his judgment should be set aside and his claim dismissed, irrespective of the merits of his claim. And this principle has been applied even though it was not established that the judgment was the product of the fraud.... "Fraud upon the court" ... embraces ... that species of fraud which does or attempts to, subvert the integrity of the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication.' 7 Moore's Federal Practice ¶ 60.33, pp. 60–351, 60–353, 60–360 (1983).

"Further, it is held that such relief may be granted even though an appeal from the order or judgment may be pending."

Now, for failure and refusal of the debtor and his counsel to comply with that order, the movant Wesley Medical Center has again moved the court for its contempt adjudication.[4] Under the Bankruptcy Amendments and Federal Judgeship Act of 1984, which now governs this matter,[5] the bankruptcy court appears to have no contempt powers. As recently analyzed by

---

**4.** The motion at bar was filed on August 8, 1984, and read as follows:

"On February 1, 1984, this Court ordered a $25,000.00 draft held by the Clerk of the Bankruptcy Court to be turned over to respondent and his attorney.

"On July 25, 1984, this Court entered its order vacating and setting aside its order of February 1, 1984, directing the turnover of the draft to respondent and his attorney, said order of July 25, 1984 directing that the $25,000.00 be returned to the registry of the Bankruptcy Court.

"That respondent and his attorney have failed and refused to comply with and have disobeyed and disregarded the provisions of the Court's July 25, 1984 order in that the respondent and his attorney have failed and refused to pay $25,000.00 into the registry of the Bankruptcy Court as of August 7, 1984."

**5.** The sections of the new Act pertaining to the jurisdiction and power of bankruptcy court are effective with respect to all cases pending on the date of passage of the Act, July 10, 1984, and filed thereafter.

this court in *Matter of R and M Porter Farms,* In proceedings under chapter 7 of the Bankruptcy Code No. 84–00261–SJ–11 (Bkrtcy.W.D.Mo. Oct. 29, 1984), this court summarized the current situation as follows:

"The bankruptcy court, under the current decisions and statutes defining its authority to enforce its own orders, must currently be circumspect regarding its powers in this regard. In *Lindsey v. Ipock,* 732 F.2d 619 (8th Cir.1984), our court of appeals appeared to indicate that the bankruptcy court might lawfully be bequeathed such power by the district court. Thus, with respect to the interim emergency rule for bankruptcy court administration, the court of appeals intimated that it was valid insofar as it might grant contempt powers to the bankruptcy court even after the effective date of *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50 [102 S.Ct. 2858, 73 L.Ed.2d 598] (1982). But this was only dictum and the court explicitly refrained from so holding. And it does not appear that the United States District Court for the Western District of Missouri has, under the current statutory provisions applicable to bankruptcy cases, confided powers to enforce orders and judgments, by the exercise of contempt powers or otherwise, to the bankruptcy court. It could conceivably violate the rule of *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* *supra,* to do so in light of the plurality's

suggestion in that case that such action may be without the power of a non-Article III court."

Accordingly, this court entered its order on the motion of the Wesley Medical Center, setting a hearing for October 31, 1984, with the intention of making a report and recommendation to the district court as provided in 28 U.S.C. § 157(c)(1).[6] As the hearing was convened on that date, the movant Wesley Medical Center appeared by Paul A. Rueschhoff, Esquire, and the debtor James Riley Wallace did not appear. The respondent Keith B. Koenigsdorf, Esquire, appeared to announce that he had a few minutes previously filed in the district court a petition for writ of prohibition requesting the district court to prohibit the bankruptcy court from holding a hearing.[7] The district court had previously denied a similar petition for writ of prohibition filed in an attempt to prohibit the hearing held on Wesley Medical Center's first motion for contempt for failure to obey the initial order of this court directing restoration of the monies to this court.[8] Therefore, this court proceeded with the hearing and provided an evidentiary opportunity to the parties then present. The respondents declined to adduce any evidence or other considerations, instead relying upon their contention of absence of jurisdiction.[9] Counsel for the movant Wesley Medical Center, on the other hand, adverted to the fact that the most recent order directing return of the monies to the court was not appealed;[10]

---

**6.** That section provides as follows:

"A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing do novo those matters to which any party has timely and specifically objected."

**7.** See *Wallace v. Stewart,* Civil Action No. 84–1107–CV–W–9 (W.D.Mo.).

**8.** In an order issued on April 30, 1984, in support of the oral order denying the petition for

writ of prohibition, the district court noted that the petitioner's contention was that the bankruptcy court "is without jurisdiction to entertain civil contempt proceedings." The district court then concluded that "petitioner had an adequate remedy by way of appeal from any ruling the respondent might make as a result of the March 30, 1984, show cause order." *Wallace v. Stewart,* No. 84–0420–CV–W–9 (W.D.Mo. Apr. 30, 1984).

**9.** But see p. 803 of the text of this report and recommendation, *supra.*

**10.** The files and records in this case show that the debtor and his counsel attempted to appeal from the order of July 25, 1984, but that the notice of appeal was not filed until August 7,

that it had been wilfully violated by both the debtor and counsel for the debtor; and that there had been a continuing pattern of abuse of the bankruptcy laws in the failure and refusal to return the monies to the registry of the bankruptcy court.

On the basis of the files and records and the considerations undertaken in the hearing of October 31, 1984, the bankruptcy court will recommend to the district court that the respondents be adjudged in civil contempt for failure and refusal to obey the order of July 25, 1984, directing them to turn over the monies to the registry of the court. The respondents did not appeal from the order with which they now refuse to comply. In respect of unappealed judicial orders, the authorities hold that respondents are not privileged to test their legality by noncompliance. "[D]isobedience as a method of testing the court order ... lacks precedential support for the reason that the great weight of authority holds it to be inappropriate." *Norman Bridge Co. v. Banner,* 529 F.2d 822, 829 (5th Cir.1976). It is therefore, for the foregoing reasons,

RECOMMENDED that the respondents be adjudged in civil contempt for violation of the bankruptcy court order of July 25, 1984, and that they be subjected to appropriate coercive measures to enforce compliance.

1984. Consequently, this court, in transmitting the appeal to the district court on September 11, 1984, made the following statements:

"The notice of appeal in this action has been untimely filed. The order appealed from was filed on July 25, 1984. The last day for timely filing of an appeal was August 6, 1984. See Rule 8002, Rules of Bankruptcy Procedure. 'A party who appeals from bankruptcy court to district court must file a notice of appeal within 10 days of the entry of the order or judgment appealed from ... An untimely notice deprives the district court of jurisdiction to review the bankruptcy court's order or judgment.' *Matter of Ramsey,* 612 F.2d 1220, 1222 (9th Cir.1980). See also *Campbell v. White,* 721 F.2d 644 (8th Cir.1983). Further, the appellant has not filed any designation of record in the time required by the rules of bankruptcy procedure."