In the Matter of LEMCO GYPSUM, INC., Debtor.

KEMIRA, INC., Movant,

v.

Lawrence E. MILLER, Jr., Miller Resources, Inc., Respondents.

Bankruptcy No. 486–00839.

United States Bankruptcy Court, S.D. Georgia.

Jan. 25, 1989.

---

**9.** 11 U.S.C.A. § 329(b) (West Supp.1988).

Walter C. Hartridge, Savannah, Ga., for movant.

C. James McCallar, Jr., Savannah, Ga., for respondents.

## MEMORANDUM AND ORDER ON MOTION FOR CONTEMPT

LAMAR W. DAVIS, Jr., Bankruptcy Judge.

### FINDINGS OF FACT

1) Debtor's case was filed on October 3, 1986.

2) On July 10, 1987, the Chapter 7 Trustee filed an application for leave to sell, at public sale, certain specified assets of the estate which can be generally described as the Debtor's machinery, fixtures, equipment, building and contents with which it had engaged in recycling of gypsum.

3) A hearing to consider the Trustee's application and any objections to it was held on August 10, 1987 and on August 17, 1987, the Honorable Herman W. Coolidge entered an Order permitting the Trustee to conduct the sale of the subject property upon the conditions and requirements stated in the Order.

4) That Order contained a condition and requirement providing that: "Unless other arrangements are made satisfactory to both the Trustee and Kemira (debtor's landlord), all property shall be removed from the site within sixty (60) days following the sale." No such arrangements were made. Lawrence E. Miller, Jr., admits that he was aware of the terms of the sale when he bid on the property. He further admits that while the timetable could have been met, he failed to do so because of the expense and because he believed he could resell the assets to third parties for a better price if they saw the plant assets on site, rather than disassembled and in storage.

5) The date of sale was set for October 11, 1987, by a revised notice sent by the Trustee filed in this Court on September 23, 1987, and approved by Judge Coolidge on September 30, 1987.

6) On November 23, 1987, Judge Coolidge entered an Order confirming the public sale of the Debtor's personal property to Miller Resources, Inc., for the sum of $200,000.00. The Order recited that Miller Resources "is a company owned in whole or in part by Lawrence E. Miller, the Debtor's former president." The Order provided that the sale was confirmed unless a party in interest objected within ten days. No objection was filed or served and the sale became final on December 3, 1987.

7) The auctioneer's report which the Trustee filed with the Court indicated that the sale was well-advertised and attended, and that the successful bulk bid of $200,000.00 was more than twice the combined values of the items offered separately. The cost of removal of the industrial equipment and buildings was a significant factor in the monetary amount of bids received. The Court-ordered condition that the property be removed within sixty (60) days was advertised and announced as a condition of the sale and this had a negative impact on the amount and number of bid prices as well.

8) On June 28, 1988, Kemira, Inc., the owner of the real estate on which the subject property was located filed a Motion alleging that Miller Resources, Inc., and Larry E. Miller, Jr., had failed to remove the property within sixty days following the sale as required by previous Court Order and sought damages for loss of use of its real property after December 21, 1987.

9) On August 17, 1988, this Court entered an Order which, *inter alia*, required Lawrence E. Miller, Jr., and Miller Resources, Inc., to show cause on September 6, 1988, why they should not be held in contempt of Court for failure to comply with previous orders of this Court and particularly this Court's Order of August 17, 1987. An evidentiary hearing was conducted on September 6th, as scheduled, at which time the Respondents raised certain jurisdictional and procedural defenses, and defended the order to show cause on the merits as well.

10) On October 20, 1988, this Court entered an Order granting the Motion for

Reconsideration of Lawrence E. Miller, Jr., and Miller Resources, Inc., and expressly found that "the contempt complained of is civil in nature and concerns violation of this Court's Orders dated August 17, 1987 and August 17, 1988, in that the purchaser at the Trustee's sale, Miller Resources, Inc., by and through its agent Lawrence E. Miller, Jr., has failed to remove the personal property within the time limits established by this Court and such action is not only contemptuous of this Court's Order, but has deprived Kemira, Inc., of the use of its real property."

11) At the hearing conducted on November 7, 1988, it was expressly stipulated by counsel for Lawrence E. Miller, Jr., and Miller Resources, Inc., that the transcript of the hearing conducted on September 6, 1988, together with all exhibits thereto, would be admitted as evidence.

12) Lawrence E. Miller, Jr., acting individually and as executive officer of Miller Resources, Inc., was familiar with the terms of Judge Coolidge's Order of August 17, 1987, and November 23, 1987, and this Court's Order of August 17, 1988. Mr. Miller, individually and as executive officer of Miller Resources, Inc., made a deliberate decision not to abide by the terms of Judge Coolidge's Orders or this Court's Orders, a decision motivated by his desire to realize greater profits from the resale of the assets in question.

13) Mr. Miller borrowed $100,000.00 on his personal signature and in addition invested $5,000.00 more for a total personal investment of $105,000.00 of the purchase price.

14) At the sale conducted on October 23, 1987, Mr. Miller personally made the bid for the subject property and issued his personal check for $231,000.00 to the Trustee. He conducted the bidding without identifying Miller Resources, Inc., as a purchaser and at least two months passed before the Trustee was informed that the subject property would be conveyed to Miller Resources, Inc., rather than to Mr. Miller personally.

15) Mr. Miller caused Miller Resources, Inc., to begin the removal of property on or about March 1, 1988. As of the date of the hearing, that removal has not been completed.

16) In view of the fact that Judge Coolidge's Orders became final on December 3, 1987, Miller Resources, Inc., had sixty (60) days from that date, i.e. through February 1, 1988, to remove the property from the premises of Kemira, Inc.

17) Due to the delay in removal of the property Kemira has been deprived of the use of five acres of property it owns for the storage of industrial by-products. The cost of preparing a substitute five acre site on other property of Kemira, Inc., has been demonstrated to be $78,000.00. This site preparation had to be performed by Kemira much sooner, due to the default, than if Respondents had performed as required by the terms of the sale. However, eventually, this site preparation would be necessary. Kemira has also been deprived of the reasonable rental value of the site for the period Respondents have occupied it in violation of the terms of the sale. Under the lease with Lemco, Kemira would receive $3,000.00 per year plus an amount calculated on the volume of by-product purchased by Lemco, subject to a maximum of 200,000 tons per year. Under the lease, Lemco actually purchased 92,000 tons of by-product for a price of $145,490.00 or an annual additional rent due of $36,372.50 from 1981–1985.

## CONCLUSIONS OF LAW

Before the Court is the motion of Kemira, Inc., to have the sanction of civil contempt imposed upon Lawrence E. Miller, Jr., and Miller Resources, Inc., for failure to abide by and comply with Orders of this Court. The purpose of civil contempt is to vindicate the rights of aggrieved persons under valid court orders. In the instant case, the aggrieved party, Kemira, Inc., instituted the proceeding and upon a finding of civil contempt by this Court, is entitled to benefit from such finding. Such benefit may consist of coercive or compensatory relief. Here, Kemira, Inc., seeks compensatory relief to reimburse it for its damages due to the noncompliance of Law-

rence E. Miller, Jr., and Miller Resources, Inc., with Orders of this Court. *Louisiana Education Association v. Richland Parish School Board,* 421 F.Supp. 973 (W.D. La.1976) aff'd, 585 F.2d 518 (5th Cir.1978); *Miller v. Carson,* 550 F.Supp. 543 (M.D. Fla.1982).

Bankruptcy Rule 9020, contempt proceedings, sets forth the procedure for addressing contempt committed in a bankruptcy case. In addition to Rule 9020, the inherent civil contempt power to enforce compliance with lawful judicial orders is well-recognized, as judicial power to issue an order carries with it the power to enforce such order. *Kellogg v. Chester,* 71 B.R. 36 (N.D.Tex.1987); *In re Miller,* 81 B.R. 669 (Bankr.M.D.Fla.1988). Also see: *In re Newport Offshore, Ltd.,* 88 B.R. 566, 571 (Bankr.D.R.I.1988); *In re Haddad,* 68 B.R. 944 (Bankr.D.Mass.1987); *In re McLean Industries, Inc.,* 68 B.R. 690 (Bankr. S.D.N.Y.1986); *In re Shafer,* 63 B.R. 194 (Bankr.D.Kan.1986); *In re McCullough,* 63 B.R. 97 (Bankr.E.D.Pa.1986); *In re L.H. Realty, Inc.,* 62 B.R. 910 (Bankr.D.Vt. 1986); *Matter of Crum,* 55 B.R. 455 (Bankr.M.D.Fla.1985); *In re Damon,* 40 B.R. 367 (Bankr.S.D.N.Y.1984); *In re Crabtree,* 39 B.R. 702 (Bankr.E.D.Tenn. 1984); *In re Burrow,* 36 B.R. 960 (Bankr. D.Utah 1984). Cf: *United States v. Revie,* 834 F.2d 1198, 1206 (5th Cir.1987), cert. denied — U.S. —, 108 S.Ct. 2845, 101 L.Ed.2d 882 (1988) (A show cause hearing for the failure to obey a turnover order falls within the authority granted in 28 U.S.C. Section 157. The Court did not decide, however, whether the Bankruptcy Court is vested with civil contempt powers); *Budget Service Co., v. Better Homes of Virginia,* 804 F.2d 289, 293 (4th Cir.1986) (A finding of civil contempt is not necessary in order to impose *sanctions* under 11 U.S.C. Section 362(h). The Fourth Circuit expressly did not decide whether Bankruptcy Judges have authority to find one in civil contempt). The Court is aware of contrary authority. See: *In re Sequoia Auto Brokers Ltd., Inc.,* 827 F.2d 1281 (9th Cir. 1987); *In re Continental Air Lines, Inc.,* 61 B.R. 758, 773 (S.D.Tex.1986); *In re Industrial Tool Distributors, Inc.,* 55 B.R. 746, 751 (N.D.Ga.1985); *In re Omega Equipment Corp.,* 51 B.R. 569, 573 (D.D.C. 1985); *In re Mab Foods Inc.,* 49 B.R. 73 (E.D.N.Y.1985); *In re Wallace,* 46 B.R. 802 (Bankr.W.D.Mo.1984).

■ Notwithstanding the existence of contrary authority, this Court is not persuaded by it in light of the articulate and well-reasoned opinion of Judge Paskay in the *Miller* case. In particular, Judge Paskay's analysis of the *Sequoia* opinion is persuasive. It is clear that a court of competent jurisdiction, whether an Article III or an Article I court, has "the inherent power to enforce obedience of their lawful orders issued in connection with the proceeding over which such court had subject matter jurisdiction." *Miller,* at 675.[1] Moreover, while it is historically accurate that Referees in Bankruptcy under the Bankruptcy Act had no contempt powers

---

1. In finding that the Bankruptcy Court does not have the power to impose criminal and civil contempt sanctions, the Ninth Circuit set the stage for an irreconcilable conflict for those courts which adopt the Ninth Circuit position regarding contempt and still find that the Bankruptcy Court has the power to impose sanctions under Bankruptcy Rule 9011. The Ninth Circuit in *Gonzales v. Parks,* 830 F.2d 1033, 1036 n. 7 (9th Cir.1987) placed itself squarely in the midst of this conflict. The Ninth Circuit reasoned that:

> Rule 9011 is not subject to the same criticism as Rule 9020. Rule 9011, unlike Rule 9020, is not based on a past Bankruptcy Rule or upon a section of the 1978 Bankruptcy Act that has been repealed. Therefore the power to impose sanctions under Rule 9011 should be interpreted as having been granted by Congress when it allowed the Bankruptcy Rules to become law. See 28 U.S.C. § 2075 (1982) (Congress' delegation of power to the Supreme Court to prescribe bankruptcy procedural rules). (Citation omitted)

It is inconceivable to me that Bankruptcy Rule 9020, also promulgated pursuant to the authority granted in 28 U.S.C. Section 2075 prior to the 1984 amendments and subsequently amended in 1987, is not, standing alone, sufficient authority for bankruptcy judges to exercise the contempt powers, *Sequoia* at 1288, when Bankruptcy Rule 9011 promulgated pursuant to the same authority is, standing alone, sufficient authority for bankruptcy judges to impose sanctions. Bankruptcy judges have been granted power to impose both under 28 U.S.C. Section 2075, or neither.

under the General Orders which governed the practice and procedure, it is equally clear that since 1973, the United States Supreme Court has adopted and amended various rules of bankruptcy procedure, pursuant to its authority under 28 U.S.C. Section 2075, which have granted the Bankruptcy Court the power of contempt. See: Bankr. R. 920, Bankr. R. 9020 and Bankr. R. 9020 as amended. Finally, there is ample statutory authority as a basis for the contempt power. See *Miller* at 676–678 and cases cited therein.

In addition, this Court is not persuaded that it does not have jurisdiction over Lawrence E. Miller, Jr., and Miller Resources, Inc., under the authorities cited by their counsel, i.e., *In the Matter of Xonics, Inc.*, 813 F.2d 127 (7th Cir.1987) and *In the Matter of Chicago, Rock Island and Pacific Railroad Company*, 794 F.2d 1182 (7th Cir.1986) because these decisions are clearly distinguisable from the case at bar. In *Xonics* the court merely held once property of the estate is abandoned, and the abandonment is final, any dispute between creditors who claim an interest in the property must be resolved in another forum. As applied to the facts here, *Xonics* is not persuasive. Here the sale terms regarding removal of the property have never been fully complied with by the purchaser. Until they are, this court must retain jurisdiction, just as it would if the purchaser never paid the amount of his bid to the Trustee. *Xonics* also recognized that there can be a link between abandoned property and the estate if it is impossible to fully administer the estate without further intervention by the Bankruptcy Court. *Id.* at 132. Such is the case here. The Trustee has sold the property and holds the proceeds of the sale to administer. That fund is subject, however, to the claims not only of creditors but for the payment of administrative expenses. Conceivably, the land owner where the property has remained far beyond the allotted sixty days could make a claim against the Trustee, or the proceeds he holds, for the delay. Thus it is essential that this Court retain jurisdiction to enforce its order and insure a cessation in the accrual of any such claim.

Likewise, in *Rock Island*, the property over which the dispute arose had been the subject of a final disposition by the Trustee. The land was sold and the proceeds paid. So far as the opinion recites, there was no default by a party with respect to the terms of the sale itself—instead, the dispute was a totally separate and unrelated claim. Since the dispute here arises out of a material breach of the terms of the sale, it would be curious indeed to hold that this Court has been stripped of jurisdiction to hear this contempt matter.

The Court has the power to punish contempt of its authority such as "[d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." 18 U.S.C. § 401(3). "Assuming that the underlying order properly issued, consideration by a bankruptcy court of a civil contempt motion will encompass only two issues: whether the alleged contemnor knew of the order and whether he complied with it." *Kellogg, supra* at 38. Also see: *Terminal R.R. Ass'n v. United States*, 266 U.S. 17, 45 S.Ct. 5, 69 L.Ed. 150 (1924); *In re Rubin*, 378 F.2d 104 (3rd Cir., 1967); *Yates v. United States*, 316 F.2d 718, 723 (10th Cir.1963). "It is the deliberate disobedience of a court's order that is the illegal act which constitutes civil contempt, and not the actual intent of the party which is the subject of judicial inquiry." *In re Parr*, 13 B.R. 1010, 1016 (E.D.N.Y.1981) (citations omitted).

■ This Court concludes as a matter of law that on the record before it, Lawrence E. Miller, Jr., and Miller Resources, Inc., deliberately violated Judge Coolidge's Orders of August 17, 1987 and November 23, 1987, as well as this Court's Order of August 17, 1988. The Court further concludes that the proof of such deliberate violations is clear and convincing so as to subject both Lawrence E. Miller, Jr., and Miller Resources, Inc., to civil contempt.

The actions of Lawrence E. Miller, Jr., were contemptuous not only because they were intentional, deliberate violations of the terms of the sale regarding removal of the property, but were calculated to en-

hance the profit margin enjoyed by Respondent upon resale. It is apparent from his testimony that Mr. Miller never planned to abide by that condition of the auction, even at the outset. Nevertheless he was able to purchase the assets at what he believed was a ridiculously low price precisely because no other bidder would pay more than he bid with knowledge of the sixty-day provision. Thus his manipulation of this Court began at the moment he made his bid. He allowed the price to be realized by the Trustee to be depressed or chilled by the removal provision, and sought to profit by purchasing at that depressed price, without any intention of going to the expense of removing anything until it was sold.

The Court concludes that as a matter of law, the sale of the property in question became absolute and final on December 3, 1987. The conditions and requirements and of the removal of the property and tender of the property were controlled by the terms of the Court's Order of August 17, 1987 and the advertisement of the sale under said Order of Sale. There was no condition that the Trustee deliver a bill of sale in order to render the sale final. The Order of Sale as confirmed by subsequent Order constituted the contract of sale and did not require the Trustee to deliver documents. See O.C.G.A. § 11-2-503(5).

With respect to the individual liability for civil contempt of Lawrence E. Miller, Jr., the Court observes that in view of Mr. Miller's intimate involvement (as principal stockholder and president) with Lemco Gypsum, Inc., the original debtor, and his having personally advanced funds to effectuate the purchase of the personal property which he later titled in the name of another family corporation, a strong case can be made for piercing the corporate veil in that Mr. Miller has over-extended his privilege in the use of a corporate entity in order to defeat justice. *Kelly v. Austell Building*

*Supply, Inc.,* 164 Ga.App. 322; 297 S.E.2d 292 (1982). Nevertheless, this Court declines to impose liability upon Mr. Miller on that basis, but rather concludes as a matter of law that Mr. Miller himself is individually in contempt of this Court. It has been Mr. Miller at all times who has planned and implemented the affairs of Miller Resources, Inc., with respect to all matters before this Court, and in particular with respect to the purchase of the equipment in question from the Trustee of Lemco Gypsum, Inc. He is responsible for the subsequent failure of Miller Resources, Inc., to remove that property from the real property of Kemira, Inc., within the time required by this Court's Order of August 17, 1987 and this Court's Order of August 17, 1988, requiring removal of such property instanter. Further, a corporate officer is bound by the terms of an order issued to the corporation. *Heinze v. Butte & B. Consolidated Mining Co.,* 129 F. 274 (9th Cir. 1904), cert. denied, 194 U.S. 632, 24 S.Ct. 856, 48 L.Ed. 1159. Also see: *Teele Soap Mfg. Co., v. Pine Tree Products Co.,* 8 F.Supp. 546 (N.H.1934) (Officer of corporation who acted in willful defiance of an injunction against corporation, of which he had due notice, was guilty of contempt); *United States v. McAndrew,* 480 F.Supp. 1189 (E.D.Va.1979) (Nonparties who are legally identified with parties may be held in contempt if they have actual notice of the injunction). Procedural niceties will not operate to strip the Court of its inherent power to vindicate its authority where alleged contemnors have intimate familiarity with the terms of the order and their duties thereunder. *McAndrew, supra* at 1192.

As of January 1, 1989, Kemira, Inc., is entitled to recover the sum of $41,250.00 from Lawrence E. Miller, Jr., and Miller Resources, Inc., as compensatory relief as a result of a civil contempt committed by the said Lawrence E. Miller, Jr., and Miller Resources, Inc.[2]

---

2. The measure of damages for site preparation of another area to store the by-product is not the full $78,000.00 but rather the time value of that money for whatever period it was spent earlier than it would have been if Respondents had cleared the site as required. I calculate this

to be $25.80 per day until the site is cleared ($78,500.00 × 12% per annum divided by 365). To this amount is added the rental value of the site itself, use of which has been denied to Kemira. This amounts to $99.65 per day ($145,490.00 divided by 4 divided by 365). While

## ORDER

Pursuant to the foregoing Findings of Fact and Conclusions of Law IT IS THE ORDER OF THIS COURT that:

1) Lawrence E. Miller, Jr., and Miller Resources, Inc., are in civil contempt of this Court for failing to comply with the Order of the Honorable Herman W. Coolidge dated August 17, 1987 and November 23, 1987, and this Court's Order of August 17, 1988.

2) A judgment in favor of Kemira, Inc., against Lawrence E. Miller, Jr., and Miller Resources, Inc., be entered in the amount of $41,250.00 as compensation to Kemira, Inc., for its damages suffered as a result of the contempt of the said Lawrence E. Miller, Jr., and Miller Resources, Inc., to January 1, 1989, together with the additional sum of $125.45 per date from January 1, 1989 until the property is cleared, relinquished to Kemira, Inc., and accepted by Kemira, Inc., as being in acceptable condition.

---

Lemco and Kemira expected a higher volume of by-product sales and associated rent, this is the actual amount sold while the plant was operated or attempted to be operated and is the least speculative measure of rental value available. Thus, the total loss to Kemira is $125.45 per day from February 1, 1988 until the site is cleared. Through January 1, 1989, the damages thus total $41,250.00.