In re Charles SHIRLEY, Debtor.

Donald F. WALTON, Acting United States Trustee, Region 21, Plaintiff,

v.

William JONES, d/b/a The Mortgage Place, Defendant.

Bankruptcy No. 93–77254.
Adv. No. 94–6219.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

July 14, 1995.

James H. Morawetz, U.S. Trustee's Office, Atlanta, GA, for plaintiff.

C. Samuel Rael, Atlanta, GA, for defendant.

## ORDER

MARGARET H. MURPHY, Bankruptcy Judge.

This adversary proceeding is before the court on Plaintiff's Motion For Imposition of Sanctions Against Defendant For Contempt of Court (the "Contempt Motion") for failure to obey the Preliminary Injunction entered September 1, 1994 and the Permanent Injunction entered October 18, 1994. The U.S. Trustee's Contempt Motion and the Notice of Hearing were served upon Defendant and upon Defendant's attorney December 15, 1994 and January 30, 1995, respectively. Hearing was held February 23, 1995. Defendant and his attorney were present at that hearing. The parties were permitted to file post hearing briefs. The U.S. Trustee filed a brief; Defendant did not.

### PROCEDURAL HISTORY

The U.S. Trustee alleged in the complaint which commenced this adversary proceeding that Defendant had filed the Chapter 13 peti-

tion in the main case in the fictitious name of Charles Shirley to forestall the scheduled foreclosure sale of property owned by Linda Jeanette Shirley. At the hearing on the U.S. Trustee's motion for a preliminary injunction held August 23–24, 1994, Ms. Shirley testified that at the time she consulted Defendant, she had her own Chapter 13 case pending in which the automatic stay had been modified to permit her mortgagee to foreclose on her residence. Ms. Shirley testified that she paid Defendant $1,500.00 based upon Defendant's representation that, although it was last minute and would cost more, they could "petition the court for appeal" to stop the threatened foreclosure. Ms. Shirley further testified that she was unaware that Defendant had filed a bankruptcy petition in the name of Charles Shirley (who does not exist), listing Ms. Shirley's property as an asset, until she began receiving notices at her residence pertaining to the case.

In addition to the testimony of Ms. Shirley, the U.S. Trustee presented the testimony at the hearing of several witnesses, including five other "customers" of Defendant and Defendant's secretary/receptionist. The testimony of those witnesses established Defendant's *modus operandi:* By means of telemarketing by his secretary and the mailing of 800–900 fliers per month to prospects whose names were obtained from the foreclosure advertisements in the local newspapers, Defendant solicited customers with promises that he could stop the foreclosure. Defendant was not engaged in the business of obtaining refinancing, although he sometimes discussed with a customer refinancing as a possible service he could provide.

The evidence presented at the preliminary injunction hearing established that Defendant, doing business as The Mortgage Place, operated to stop foreclosures by filing ostensibly *pro se* skeletal bankruptcy petitions. The evidence showed Defendant participated in filing or caused to have filed more than one such bankruptcy petition in a fictitious name to delay a foreclosure proceeding and showed that he routinely advised his customers not to disclose on the *pro se* affidavit required in this district that the customer received assistance in preparing the petition from Defendant or any employee of the Mortgage Place.

A review of the evidence presented at the preliminary injunction hearing shows that Defendant was in the business of preying upon the ignorance and desperation of persons anxious to save their home from foreclosure, utilizing methods whose description was sufficiently specific to secure payment of an excessive fee and sufficiently ambiguous to prevent the customers from becoming wary, while providing promises of assistance whose details were tailored to the client's experience or lack thereof. For example, if a customer were reluctant to file bankruptcy, Defendant would promise proceeding in state court or discuss refinancing. The fee Defendant charged his customers was usually $1,500.00 and included only the preparation of a skeletal bankruptcy petition (a "skeletal" petition requires a minimum of information necessary to commence a bankruptcy and contains no schedules and plan, which are allowed to be filed within 15 days[1]). The average fee charged in this district by licensed attorneys does not exceed $1,000.00[2] for typical services, which include preparing and filing a Chapter 13 petition, schedules and plan and representing the debtor at the § 341 meeting of creditors, at the hearing on confirmation, and, often, at a motion to lift stay hearing. The average attorneys fee for filing a "no-asset" consumer Chapter 7 case is generally less.

Defendant's practice of charging a $1,500.00 fee would be inappropriate without court approval if he were an attorney. The maximum so-called "retainer" or advance fee

1. Bankruptcy Rule 1007 requires a debtor to file schedules of assets and liabilities, a schedule of current income and expenditures, a schedule of executory contracts and unexpired leases, and a statement of financial affairs (the "Schedules"). If those Schedules are not filed with the petition, they must be filed within 15 days thereafter. Bankruptcy Rule 3015 requires a Chapter 13 debtor to file a plan with the petition or within 15 days thereafter.

2. See Standing Order entered May 15, 1991 (copy attached as exhibit to this order), which is applicable to all Chapter 13 cases filed in this district.

allowed by this court (without a detailed application and prior court approval) in a Chapter 13 case is $400.00.[3] Many Chapter 13 attorneys commence a case for a debtor in Chapter 13 for less than $400.00, as the whole fee allowed in the case is structured to be paid through the Debtor's Chapter 13 plan at $75.00 per month.[4] Thus, for a non-lawyer to charge and obtain $1,500.00 from debtors who could obtain *legal* services for much less is an abuse of the bankruptcy court system and a fraud on the public. The practice is repugnant when the preparer is a non-lawyer because the case is not filed in good faith to obtain the opportunity to pay creditors via a plan; the case has little or no chance of success without a lawyer to guide the debtor; the debtor's scarce resources are obtained by a form of deception, promising that which cannot be delivered and the public, the court system—including creditors—and the Debtor, however desperate or willing, are abused.

At the conclusion of the preliminary injunction hearing August 24, 1994, the undersigned addressed Defendant at length directly and explained to him the types of activities in which he had engaged which would be considered practicing law. The undersigned orally directed Defendant on the record in open court to cease providing advice, assistance or services related to the preparation or filing of bankruptcy petitions or regarding remedies available under the Bankruptcy Code. See, transcript August 24, 1994. By written order entered September 1, 1994 (the "Preliminary Injunction"), this court concluded that Defendant was engaged in the unauthorized practice of law and that the practices in which Defendant engaged constituted an abuse of the bankruptcy court system and process and that the continuation of those practices posed a substantial risk of irreparable injury to the public. A preliminary injunction was ordered which instructed Defendant to cease those activities and to prevent his employees or anyone using the facilities of The Mortgage Place from performing those activities. Additionally, Defendant, his employees or employees of The Mortgage Place were enjoined from entering into any fee-sharing agreements or arrangements with attorneys, law firms, paralegals or paralegal service firms with respect to bankruptcy matters.

Defendant filed a notice of appeal of the Preliminary Injunction, but, on October 18, 1994, a consent order (the "Permanent Injunction") was entered in which Defendant agreed to a permanent injunction of the activities described in the Preliminary Injunction. Defendant also agreed to imposition of a monetary sanction in the amount of $1,000.00, payable within 20 days, and to payment of restitution to three individuals in the total amount of $2,350.00, payable over a five-month period. In connection with entry of the Permanent Injunction, a Stipulation of Dismissal of Defendant's appeal of the Preliminary Injunction was filed in the U.S. District Court, which dismissal was approved by the U.S. District Court November 17, 1994.

On December 15, 1994, the U.S. Trustee filed the Contempt Motion, hearing on which was held February 23, 1995.

## FINDINGS OF FACT

At the Contempt Motion hearing, the U.S. Trustee presented three witnesses who testified that Defendant had prepared skeletal Chapter 13 bankruptcy petitions for them after entry of the Preliminary Injunction. Mr. Hoyle Bridges testified that over a six month period he paid $1,500.00 to Defendant, of which $450.00 was paid after August 24, 1994. Their business relationship culminated with preparation and filing by Defendant of a bankruptcy petition for Mr. Bridges October 4, 1994. Mr. Bridges testified that the signatures on the petition and the *pro se* affidavit were not his. On Defendant's instruction, Mr. Bridges marked "No" the question on the *pro se* affidavit regarding whether he received assistance in preparing the petition.

Another witness, Deysi Steer, testified that Defendant accepted money from her August 25, 1994 (the day after the hearing at which this court orally instructed Defendant, in detail, to discontinue the unauthorized practice

---

**3.** See note 2.       **4.** See note 2.

of law), and prepared a skeletal bankruptcy petition for her which she filed *pro se* September 5, 1994.

A third witness, Joyce Davis, testified that she first went to The Mortgage Place for help in early 1994. She signed a "Consulting Agreement" with Defendant in July 1994 and began payments which continued from June through November, 1994, including $375.00 paid in November, 1994. A bankruptcy petition was prepared by Defendant and filed by Ms. Davis November 1, 1994. In the course of Ms. Davis' testimony, she described another petition which had been filed by Defendant in the fictitious name of Mary Davis in June, 1994.

Another witness, Charlotte M. George, testified she received in mid-September, 1994, a flyer from Defendant advertising his services. She paid Defendant $350.00 September 22, 1994, but the next day cancelled the contract with Defendant.

The evidence presented by the U.S. Trustee shows that, despite the Preliminary Injunction and the Permanent Injunction, Defendant continued to operate in the same place, under the same name and in the same manner as he had operated before the U.S. Trustee filed this complaint. In opposition to the U.S. Trustee's Contempt Motion, Defendant challenges this court's authority and jurisdiction to hear and enter an order on such a motion. Specifically, Defendant asserts that:

(a) This court is without power to enjoin or sanction the unauthorized practice of law in the context of an individual bankruptcy case;

(b) The U.S. Trustee lacks standing to act as Plaintiff in this proceeding;

(c) This court lacks the power to preside over contempt proceedings; and

(d) Defendant is entitled to a jury trial.

### CONCLUSIONS OF LAW

The first issue raised by Defendant is whether a bankruptcy court has power to enjoin or sanction the unauthorized practice of law within the context of an individual's bankruptcy case. Pursuant to 11 U.S.C. § 105(a), this court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Section 105 permits this court to take any action, *sua sponte*, "necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." Additionally, pursuant to 11 U.S.C. § 329, this court may examine transactions between debtors and their attorneys. Section 329 has also been found to provide authority for the bankruptcy court to examine transactions involving the unauthorized practice of law before a bankruptcy court. *U.S. Trustee v. Kasuba (In re Harris)*, 152 B.R. 440 (Bankr.W.D.Penn.1993). The U.S. Supreme Court has approved a broad interpretation of 28 U.S.C. § 1334(b) and § 157(a). *Celotex Corp. v. Edwards*, —— U.S. ——, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995). Ample authority exists for a bankruptcy court to hear a challenge to the unauthorized practice of law in connection with a bankruptcy case.

Similarly, ample authority exists for the U.S. Trustee to appear as a proper party in interest in this action. The U.S. Trustee argues that Defendant's challenge to the U.S. Trustee's standing has been waived or, alternatively, is moot. The U.S. Trustee asserts that Defendant's execution of consent to entry of the Permanent Injunction constitutes a waiver of a challenge to the U.S. Trustee's standing. The U.S. Trustee asserts that the standing issue is moot because this court has now heard all the evidence and could enter *sua sponte* any order arising from the proceeding instituted by the U.S. Trustee. Both the U.S. Trustee's arguments have merit.

Substantively, however, the U.S. Trustee in this proceeding is merely fulfilling the role Congress intended: "[B]ankruptcy watchdogs to prevent fraud, dishonesty, and overreaching in the bankruptcy area." H.R. No. 989, 95th Cong., 2d Sess. 88 (1978) U.S.Code Cong.Admin.News pp. 5787, 5963, 6173. Section 307 of the Bankruptcy Code permits the U.S. Trustee to "raise and appear and be heard on any issue in any case or proceeding" under Title 11. Defendant's challenge to the U.S. Trustee's standing is without merit.

■ Another issue raised by the Contempt Motion is whether this court has jurisdiction to hear any contempt motion. Many courts have held that a bankruptcy court has "the inherent power to enforce obedience of their lawful orders issued in connection with the proceeding over which such court had subject matter jurisdiction." *Matter of Lemco Gypsum, Inc.,* 95 B.R. 860, 863 (Bankr.S.D.Ga. 1989), *citing Matter of Miller,* 81 B.R. 669, 675 (Bankr.M.D.Fla.1988). The *Lemco Gypsum* court determined that "[i]n addition to Rule 9020, the inherent civil contempt power to enforce compliance with lawful judicial orders is well-recognized, as judicial power to issue an order carries with it the power to enforce such orders." *Lemco Gypsum,* 95 B.R. at 863.[5]

In the case of *Tele–Wire Supply Corp. v. Presidential Financial Corp., Inc. (In re Industrial Tool Distributors, Inc.),* 55 B.R. 746 (Bankr.N.D.Ga.1985), the court held the statutory delegation of either civil or criminal contempt power to the bankruptcy court was an unconstitutional delegation of Article III powers. *Tele–Wire,* however, was based solely upon 11 U.S.C. § 105(a). Furthermore, *Tele–Wire* was decided prior to the 1987 amendment of Bankruptcy Rule 9020, which specifically governs contempt powers of the Bankruptcy Court.[6]

The Bankruptcy Rules are promulgated by the United States Supreme Court and approved by Congress and have the force and effect of law. Bankruptcy Rule 9020 was amended in 1987. The Rule currently provides:

### Rule 9020  Contempt Proceedings.

(a) **CONTEMPT COMMITTED IN PRESENCE OF BANKRUPTCY JUDGE.** Contempt committed in the presence of a bankruptcy judge may be determined summarily by a bankruptcy judge. The order of contempt shall recite the facts and shall be signed by the bankruptcy judge and entered of record.

(b) **OTHER CONTEMPT.** Contempt committed in a case or proceeding pending before a bankruptcy judge, except when determined as provided in subdivision (a) of this rule, may be determined by the bankruptcy judge only after a hearing on notice. The notice shall be in writing, shall state the essential facts constituting the contempt charge and describe the contempt as criminal or civil and shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense. The notice may be given on the court's own initiative or on application of the United States Attorney or by an attorney appointed by the court for that purpose.

(c) **SERVICE AND EFFECTIVE DATE OF ORDER; REVIEW.** The clerk shall serve forthwith a copy of the order of contempt on the entity named therein. The order shall be effective 10 days after service of the order and shall have the same force and effect as an order of contempt entered by the district court unless, within the 10 day period, the entity named therein serves and files objections prepared in the manner provided in Rule 9033(b).[7] If timely objections are filed, the order shall be reviewed [*de novo*] as provided in Rule 9033.

---

5. *See Matter of Lemco Gypsum,* 95 B.R. 860, 863 (Bankr.S.D.Ga.1989) for a list of cases which support the inherent contempt power of the bankruptcy court and for a list of cases which deny the bankruptcy court contempt power.

6. Sanctions to enforce compliance with orders of the court, or to compensate a party who has suffered losses or damages by reason of another party's non-compliance with orders of the court, are for civil contempt. *Commercial Banking Co. v. Jones (In re Maxair Aircraft Corp. of Georgia, Inc.),* 148 B.R. 353 (M.D.Ga.1992). Criminal contempt sanctions are punitive in nature "and are imposed primarily for vindicating authority of the court." *Yaquinto v. Greer,* 81 B.R. 870, 879 (N.D.Tex.1988).

7. Rule 9033(b) provides:

Within 10 days after being served with a copy of the proposed findings of fact and conclusions of law a party may serve and file with the clerk written objections which identify the specific proposed findings or conclusions objected to and state the grounds for such objection. A party may respond to another party's objections within 10 days after being served with a copy thereof. . . .

The procedure set forth in Bankruptcy Rule 9020, as amended, supersedes the decision in *Tele–Wire*. *Kiker v. United States of America (In re Kiker)*, 98 B.R. 103, 108 (Bankr. N.D.Ga.1988).

The use of Section 105 together with current Bankruptcy Rule 9020 allows the bankruptcy court to exercise contempt powers. *See Kiker*, 98 B.R. at 108. Section 105(a) now allows a bankruptcy judge to take actions to enforce its orders *sua sponte;* therefore, it should be able to enforce its orders upon motion by a party in interest. *In re Clark*, 91 B.R. 324, 333 (Bankr.E.D.Penn. 1988). The *Clark* court determined that "a civil contempt order entered pursuant to B[ankruptcy] Rule 9020 does not offend the separation of powers doctrine embodied in Article III of the Constitution."[8] *Id.* at 334. Furthermore, the debtor has recourse by appealing an order of contempt to the district court for *de novo* review. Bankruptcy Rules 9020(c) and 9033; *Kiker*, 98 B.R. at 109. Therefore, Defendant's challenge to this court's power to hear and determine a motion for contempt is without merit.

■ Defendant also asserts that, as the U.S. Trustee seeks imposition of sanctions for criminal contempt, Defendant is entitled to a jury trial. In the post-hearing brief, the U.S. Trustee lowered the amount of his request for sanctions from $30,000.00 to $5,000.00, so as to bring this proceeding within the definition of a petty offense, for which Defendant is not entitled to a jury trial. *See,* 18 U.S.C. § 19 and § 3571(b)(6) and (7). As no criminal contempt sanctions will be imposed against Defendant, Defendant's complaint that he was denied a jury trial is without merit.

The earlier events in this adversary proceeding make it clear that Defendant will say and will agree to whatever is expedient at any given time but without any intent to follow through on his representations or comply with the court's directions and orders.

Almost simultaneously with Defendant's oral agreement in open court, following a lecture by the undersigned and his subsequent agreement in writing in the Permanent Injunction, Defendant continued without interruption the conduct which he had agreed to cease and from which he had been enjoined.

Options available to this court include:

(1) Sanctions for civil contempt, i.e. further compensatory awards requiring Defendant to disgorge amounts received for his services or sanctions such as a fine of $100.00 per day for so long as Defendant continues to violate the Permanent Injunction;

(2) Sanctions for criminal contempt, i.e. incarceration for specified period of time or imposition of a noncompensatory, punitive fine.

Debtor agreed in the Permanent Injunction to pay a fine of $1,000.00 but that fine has not been paid.

■ The compelling principles which underlie the Permanent Injunction are ones of public policy: protection of the non-lawyer from the deleterious consequences of other non-lawyers trying to practice law, and protection of the integrity of the bankruptcy process, including the interests of the debtor, of creditors, and of the public. With respect to sanctions for violation of the Permanent Injunction, the court has a duty to evaluate the type and magnitude of sanctions suitable to accomplish the purpose of the sanctions. Imposition of any further monetary sanctions intended to compel Defendant to comply with the Permanent Injunction or to compensate Defendant's victims is futile: Defendant would likely fail to pay additional sanctions, as he has failed to pay the sanctions already imposed, to which he consented. As the U.S. Trustee does not seek to compel Defendant to act, but rather to restrain Defendant from further illegal activities, incarceration is not a tenable option as a sanction.[9]

---

8. "If Congress can constitutionally create legal presumptions, assign burdens of proof and prescribe legal remedies for Article I courts, it seems to follow that it can constitutionally grant them the power to enforce their lawful orders through civil contempt." *Burd v. Walters*, 868 F.2d 665, 670 (4th Cir.1988).

9. Incarceration may be an option as punishment for criminal contempt but the U.S. Trustee does not seek Defendant's incarceration. Additionally, the specter of either incarceration or imposition of large fines for criminal contempt raises tangential legal issues and unwieldy procedural issues involving rights to jury trial and *de novo*

■ This court affirms the commitment of the U.S. Trustee to pursuing bankruptcy preparers who engage in fraudulent, unfair or deceptive conduct.[10] At this stage in the instant case, however, it appears appropriate for this court to seek to invoke police power by referring this matter to the appropriate authorities. Accordingly, it is hereby

ORDERED that the U.S. Trustee's motion for sanctions is DENIED.

IT IS SO ORDERED.

## EXHIBIT A

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF GEORGIA

### ORDER RE ATTORNEYS' FEES IN CHAPTER 13 CASES

To insure and promote uniformity and equitable treatment of debtors in Chapter 13 cases, *effective May 15, 1991,* it is

ORDERED that attorneys for Chapter 13 debtors in routine Chapter 13 cases shall be permitted to charge an attorney's fee up to $1,000 per case, whether individual or joint, provided, however, that:

(a) prior to the case filing, an attorney shall only be authorized to collect advance fees or retainers in a sum not to exceed $400 for each case, whether individual or joint, plus the actual costs for filing, and

(b) the balance of any such attorney's fees shall be paid under the debtor's plan at the rate of $75 per month with payments accruing from the date of the filing of the petition and payable upon confirmation and continuing monthly thereafter until paid, and

(c) upon conversion or dismissal of the case after confirmation and subject to the provisions of subparagraph (b) any unpaid fees due debtor's attorney shall be paid from the funds, if any, held by the trustee, after payment of the trustee's fees and expenses, and

(d) in the event that no plan is confirmed and the case is dismissed or converted, the attorney for the debtor shall be allowed compensation not to exceed the sum of $600.00, less any sums previously received, and it is

ORDERED that, without specific application and order, the Chapter 13 trustee is authorized to pay debtor's attorney's fees from payments made by or on behalf of the Chapter 13 debtors within the limits set forth herein, not to exceed $1,000.00, unless otherwise ordered by the court, and it is

ORDERED that, after the filing of a Chapter 13 case, attorneys for Chapter 13 debtors shall not collect any additional compensation from debtors without prior court approval based upon an appropriate application for compensation and order, and it is

ORDERED that any attorney collecting advances or retainers in excess of the authorized amounts shall be subject to sanctions and the court will require any sums collected by any debtor's attorney in excess of such amounts to be turned over to the Chapter 13 trustee for disbursement pursuant to the debtor's plan or returned to the debtor as may be appropriate, and it is

ORDERED that failure of an attorney to attend Section 341 meetings and any other scheduled meetings or hearings shall result in the reduction of the attorney's fees by the sum of $150 for each such occurrence, or in such other amount as the court finds to be appropriate, and it is

ORDERED that nothing herein shall prohibit the attorney for the debtor in any case from seeking additional or extraordinary compensation in excess of $1,000.00 by application pursuant to the provisions of the Bankruptcy Code, Rules and the factors enumerated in *Norman v. Housing Authority of Montgomery,* 836 F.2d 1292 (11th Cir.1988), and it is

ORDERED that nothing herein shall prohibit the trustee, the debtor, any creditor or

---

review of a contempt order of this court by the district court.

**10.** *See,* 11 U.S.C. § 110. The new § 110 was promulgated as a part of the 1994 Bankruptcy Reform Act and is applicable to petitions filed after the effective date of the Act, October 22, 1994.

party in interest from objecting to any compensation provided for herein.

IT IS SO ORDERED.

At Atlanta, Georgia, this 15th day of May, 1991.

/s/  <u>A.D. Kahn</u>
A.D. KAHN, CHIEF
UNITED STATES BANK-
RUPTCY JUDGE
FOR THE COURT